**In the Matter of Bobby Earl BROWN, Bankrupt.**

**No. FS–68–B–33.**

United States District Court,
W. D. Arkansas,
Fort Smith Division.

June 30, 1970.

---

1. *See* generally 14 C.F.R. § 77.

3. *See* 14 C.F.R. § 77.23.

William M. Stocks, of Bethell, Stocks, Callaway & King, Fort Smith, Ark., for bankrupt.

Dale Bumpers, Charleston, Ark., for Industrial Leasing Corp.

Larry R. McCord, of Pearce, Robinson, McCord & Maurras, Fort Smith, Ark., Bradley D. Jesson, of Hardin, Barton, Jesson & Dawson, Fort Smith, Ark., for receiver.

## OPINION

PAUL X. WILLIAMS, District Judge.

### PETITION FOR REVIEW ON REFEREE'S ORDER DENYING DISCHARGE

On October 3, 1968, Bobby Earl Brown filed a voluntary petition in bankruptcy. Industrial Leasing Corporation of Tulsa, Oklahoma, one of the creditors of the petitioner, filed a timely objection to the discharge of Mr. Brown on February 4, 1969. Later the objecting creditor elected not to proceed upon its objections to discharge and the Referee entered an Order authorizing any creditor to adopt the objections specified by Industrial Leasing Corporation. The City National Bank of Fort Smith, Arkansas entered a timely pleading adopting the objections of Industrial Leasing Corporation, and also adding a new objection. On July 28, 1969, the bankrupt filed a Motion to Strike and Response to Objection of Discharge of

Bobby Earl Brown filed by the City National Bank. The Referee sustained the motion to strike to the extent that City National Bank attempted to inject an additional ground into the proceedings; otherwise the Motion to Strike and Response to Objection of Discharge was overruled.

After an exhaustive hearing upon the issue of discharge of the bankrupt on August 7, 1969 the Court entered its Order on August 8, 1969 denying the discharge of Bobby Earl Brown.

At the conclusion of the hearing the Referee dictated his findings of fact and conclusions of law into the record and the pertinent parts are as follows:

" * * * That the primary purpose of bankruptcy is to gather assets and convert them into cash and distribute them to creditors. Secondly, is whether or not the bankrupt will receive a discharge from his debts, and in most cases that is to be the primary question. * * * and it depends largely on the square dealings and honest purpose of the bankrupt as evidenced by his acts. And unless the bankrupt can measure up to this standard of honesty, fairness and square dealing, he has failed to place himself in an equitable position to ask for this extraordinary privilege—that is, the discharge." * * *

"Now, there are many grounds which, if committed by a bankrupt, would deny his discharge. One is here before the court in the Brown case in Section 14(c) (3) of the Bankruptcy Act, and it provides, in effect, that a bankrupt commits this act to the satisfaction of the Court that he is not entitled to a discharge. That is, he obtained money by false statements. The statute says that (1) he must obtain the money or property or extension of credit, (2) that he did so by material and false statement of his financial statement, that such statement must be in writing, that it must be made or published or passed around, is what it means. And then the last amendment to the Bankruptcy

Act is that it be done by a person in business. The cases under that hold that this act may be done in such a reckless manner that the person who did it is charged with it." * * *

"Early this morning the Court allowed the previous testimony of six witnesses who had heretofore testified. If there was any error in its admission I think it has been largely cured by the testimony today, because there is very little testified here today that wasn't covered in some detail in these November and December hearings in 1968."

"The Court finds it to be a fact that the overwhelming testimony in this case sustains the objection to the discharge. The Court finds that this statement of September 1967 and February 1968 were prepared by Mr. Brown. I believe there was earlier testimony he had CPAs at that time but he saw fit to prepare it himself. He did it in such a—if not intentionally—in such a reckless way that he cannot escape its impact. I am convinced in the findings of fact that the Tulsa company relied in whole or in part on these statements, and that is all the law requires. I do not believe that Mr. Brown, under the facts in this case, has any standing to ask this Court of equity to relieve him of his debts. So there will be an order entered sustaining the objection, denying his discharge."

On August 15, 1969 the bankrupt timely filed a petition for review of the order denying the discharge of the bankrupt pursuant to 11 U.S.C.A. § 67(c) which brings the matter before this Court.

In its petition for review the bankrupt relied upon four points:

1. The execution of a lease agreement between the Bankrupt and Industrial Leasing Corporation, requiring payment in advance for possession of personal property does not constitute the obtaining of property or money on credit within the purview of Section 14(c) (3) of the Bankruptcy Act

(11 U.S.C.A. Section 32(c) (3) and no voluntary credit was ever extended by Industrial Leasing Corporation to the bankrupt.

2. The Referee erred as a matter of law in admitting into evidence, over the objection of the bankrupt, the record of testimony of witnesses other than the bankrupt testifying at the first meeting of creditors.

3. The referee erred in failing to strike the specifications to objection to discharge in that the specifications are not sufficiently definite and certain to apprise the bankrupt of the facts upon which the objector intended to rely to sustain objection.

4. The proof is insufficient to prove that the financial statements made by the bankrupt were materially false, or that a creditor relied upon the financial statements.

It was the opinion of the District Court that the portion of the record which was certified for review on August 21, 1969 was insufficient for the Court to make a judicial determination of the correctness of the Referee's holding. Therefore, the cause was remanded so that the record and the Referee's findings might be supplemented, particularly, as to the type of business relationship between bankrupt and the Industrial Leasing Corporation.

On May 25, 1970 the referee supplemented the record and certified for the Court's consideration in this cause a number of additional pleadings and the transcripts of the November 8, 1968 and December 16, 1968 hearings. The transcript of the hearing of August 7, 1969 having already been certified to the District Court.

The Referee's supplemental findings of fact is as follows:

### FINDINGS OF FACT

#### I

"Between October 19, 1967 and March 7, 1968, the bankrupt, Bobby Earl Brown, entered into four agreements with Industrial Leasing Corporation. These agreements were styled as 'leases.' In addition, Brown guaranteed two additional 'leases' executed by Charles A. Perry to Industrial Leasing Corporation. Copies of these agreements and of the Guarantee agreement are attached as exhibits to the Petition for Reclamation filed by Industrial Leasing Corporation. In due course, the Trustee responded to the Petition for Reclamation and in that response contended that it was the intention of the parties that the contractual agreements characterized as leases were intended to create a security interest in the personal property described and further that because of the failure of Industrial to make a proper filing in accordance with the Uniform Commercial Code in the State of Arkansas that the property covered by the so called leases came under control of the Trustee pursuant to Section 70–C of the Bankruptcy Act."

#### II

Hearings were held on the Petition for Reclamation and Response thereto but during the hearing of December 16, 1968, a compromise settlement concerning the Petition for Reclamation was reached by the Trustee and Industrial Leasing Corporation. The primary reasons for the settlement were the costs of the litigation, the delay of disposing of the equipment and the expense of storage all as contrasted to the value of the equipment. The compromise and settlement was orally approved by the Court on December 16, 1968, and a formal decree approving the compromise and settlement was entered on January 10, 1969. Through oversight that decree did not specifically provide for the dismissal of the Petition for Reclamation and accordingly an order is being entered today dismissing the Petition for Reclamation nunc pro tunc."

### III

"The hearings in this case reflect that it was the business practice of the bankrupt to secure a location for a restaurant, usually specializing in the preparation of fried chicken. The bankrupt would then equip the location and open the business establishment. The majority of the equipment in each location was purchased on open account from various equipment and material suppliers. The bankrupt would then enter into an agreement with Industrial Leasing Corporation of Tulsa, Oklahoma, whereby he would convey all of the equipment, including the pots and pans, in a given location to Industrial and then in turn would 'lease' it back. As a practical matter, the equipment and supplies at no time ever came into the actual possession of Industrial. The so called 'leases' were for a term of thirty-six months and required monthly rental payments. During the term of the so called lease, the bankrupt was to pay the 'use tax' on the equipment and in addition was to pay all taxes and assessments, to make all repairs, and to pay all insurance on the equipment. The bankrupt would then operate the location for varying periods of time during which he would attempt to locate some other individual to either buy or to lease the outlet and all related equipment from him. In the case of some locations in Little Rock, Arkansas, the bankrupt entered into an identical 'lease' with the new purchaser on a form provided by Industrial and in which it is specified that the bankrupt was the 'Owner' of the property. This was the identical property being 'leased' from Industrial. This subsequent 'lessee' of the equipment by Brown in some of the Little Rock locations was made with the full knowledge and consent of Industrial."

### IV

"Industrial made proper filings pursuant to the Uniform Commercial Code within the State of Oklahoma, but did not make a proper filing within the state of Arkansas. It is clear from this as well as all of the facts surrounding the transactions that the parties intended that the lease create a 'security interest' in the described equipment."

### V

"At the time the original 'leases' were executed the bankrupt testified that he requested a separate written agreement giving him the right to purchase the equipment for an additional ten (10%) percent at the end of the lease term. Bankrupt further testified that the written option to purchase was to be delivered to him at a time when he was 'in a position to purchase.' Mr. Brown testified that the purchase option was very important to him. Later then when Brown asked for the payoff on the various leases, he was given a fixed figure by Industrial.

### VI

"The so called 'Lease agreements' between Brown and Industrial were not, in fact, true leases but were intended by the parties and actually did create an interest in personal property to secure the payment or performance of any obligation. These agreements were part and parcel of an overall financing plan whereby Brown would obtain money from Industrial to finance the purchase of equipment for the locations and the continued expansion of his restaurant chain."

"The relationship between Brown and Industrial was that of debtor and creditor, rather than that of lessee and lessor. This finding is supported by the manner in which the parties treated the agreements. When Brown defaulted on the payments, Industrial brought suit against him in the District Court of Tulsa County, Oklahoma, for a money judgment for the entire balance due on the agreement."

## VII

"That the bankrupt, Bobby Earl Brown, obtained money and/or property on credit, and/or an extension or renewal of credit from Industrial Leasing Corporation. He did so on the basis of a materially false statement respecting his financial condition. Such statement and/or statements were in writing. The statement or statements were made or published or caused to be made or published by the bankrupt. At all times material the bankrupt was engaged in business and the money was obtained for that business."

## VIII

"The bankrupt, likewise, obtained money on credit and/or an extension or renewal of credit from the City National Bank of Fort Smith. He did so on a materially false statement respecting his financial condition and such statement was in writing. The statement or statements were made or published or caused to be made or published by the Bankrupt and the bankrupt was engaged in business and the money was obtained for the business."

## CONCLUSION

"Due to the above findings, the bankrupt, Bobby Earl Brown, should be denied a discharge in accordance with Section 14(c) (3) of the Bankruptcy Act."

■ After the Referee entered his supplemental findings of fact and certified additional parts of the record to this Court for review, the opportunity of filing further responsive pleadings and/or briefs was given both the bankrupt and the objector by the District Court. Neither party desired to file anything further for the Court's consideration. However, by letter, after the Referee's initial ruling in the matter, the bankrupt did notify the court that he objected to the Order requesting the Referee to certify a more extensive record for review.

In fairness to all the parties, the District Court should have before it that part of the record of the bankruptcy proceedings which is essential to make an informative and intelligent decision of the bankrupt's petition for review. In fact, we find that the court had the duty as well as the authority to enter said order.

General Order in Bankruptcy No. 47 *inter alia* specifically, provides that the Judge after seeing the Referee's report may recommit it with instructions.

In the case of United States Machinery Movers v. Beller, 280 F.2d 91 (8th Cir. 1960), the Court had before it for consideration reorganization proceedings under the Bankruptcy Act. In that case the court held that a district court judge called upon to review a Referee's order, is entitled to have from the Referee an adequate and accurate statement of the facts and the law upon which he relied in making his order. The case also held that "this Court must have a record which discloses the exact factual and legal basis for the order under review."

■ We will now consider the bankrupt's contention that the Referee admitted incompetent testimony. We find that there is sufficient competent evidence in the record to fully sustain the Referee's findings of fact. Error, if any, in the admission of evidence by the Referee was "harmless" error since it was cumulative and did not affect substantial rights of the parties.

Rule 61 of the Federal Rules of Civil Procedure reads as follows:

"No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or

defect in the proceeding which does not affect the substantial rights of the parties."

Where testimony is improperly admitted, but is merely cumulative on matters which are clearly shown by other admissible evidence, admission of such testimony is harmless. Hannigan v. Sears, Roebuck & Co. (C.A.Ill.1969) 410 F.2d 285.

Skogen v. Dow Chemical Co. (8th Cir. 1967) 375 F.2d 692, 701 holds:

"The rule is clear that 'harmless error' by the trial court will not warrant a reversal of its judgment. An error is harmless if it is not 'inconsistent with substantial justice' or does not affect the substantial rights of the parties. Rule 61, Fed.R.Civ.P.; Walsh v. Bekins Van Lines Co., 217 F.2d 388 (8th Cir. 1954)."

See also, Gerhart v. Henry Disston & Sons, Inc., 290 F.2d 778 (3d Cir. 1961) and Levenson v. Mills, 294 F.2d 397 (1st Cir. 1961) Certiorari denied. 368 U.S. 954, 82 S.Ct. 397, 7 L.Ed.2d 387.

■ Another of the bankrupt's contentions is that the specifications in the objection to discharge are not sufficiently definite to apprise the bankrupt of the facts upon which the objector is relying. A review of the specifications reflects that this contention is completely untenable.

The Objection in pertinent part states:

**I**

"That between October 19, 1967, and March 7, 1968, the Petitioner entered into four lease agreements with Robert E. Brown, the same person as Bobby Earl Brown; that on October 19, 1967, and November 2, 1967, Petitioner also executed separate leases with Charles A. Barry, and the rental payments therein were guaranteed by Robert E. Brown. The leases and guaranty agreements have been introduced into evidence by the Trustee in this cause, in the proceedings pursuant to this Petitioner's previous Petition for Reclamation, and are incorporated herein by reference."

**II**

"That at the time the alleged bankrupt filed his petition herein, he was delinquent on said leases and guaranties in the sum of $20,832.15, and the total indebtedness owed Petitioner, by acceleration resulting from his default, was $157,229.50."

**III**

"Brown induced the Petitioner to enter into the said leases and accept him as Guarantor of the Barry leases by furnishing Petitioner with two written financial statements signed by Brown, dated September 30, 1967, and February 9, 1968, respectively, and showing his net worth to be $336,013.-49, and $396,086.83, respectively; that copies of the said financial statement are attached to this petition as Exhibits #1 and #2 hereto."

**IV**

"The aforesaid financial statements were given by Brown to the Petitioner for the purpose of obtaining credit, and the Petitioner relied on the said statements in extending credit to Brown by entering into the said leases, and accepting him as Guarantor on the Barry leases; that the statements were material, false and fraudulent and known by Brown to be material, false and fraudulent at the time they were given this Petitioner; that Brown on the above said dates was worth substantially less than the statements showed and was probably insolvent."

A reading of the Objection makes it quite evident that it was both clear and definitive, apprising the bankrupt of the specific grounds for the objection. Furthermore, both the financial statements were attached as exhibits, so the bankrupt had detailed information concerning the specifications.

Having disposed of two of the points relied upon by the bankrupt in his petition for review, we now direct our attention to the bankrupt's two remaining contentions, namely, that the proof is insufficient to indicate that the financial statements made by the bankrupt were materially false or that Industrial Leasing Corporation relied upon these statements; and further that the execution of the lease agreement with Industrial Leasing Corporation did not constitute the obtaining of monies or property on credit within the purview of Section 14(c) (3) of the Bankruptcy Act.

These two points will be discussed together.

■ The legislative intent of the Bankruptcy Act is that the bankrupt is entitled to a discharge unless the Court finds that he has committed an act or acts which would be statutory grounds for the denial of the discharge. In this case the Objector to the discharge is relying upon Section 14(c) (3) of the Bankruptcy Act which reads as follows:

"The Court shall grant the discharge unless satisfied that the bankrupt has * * *"

"(3) while engaged in business as the sole proprietor, partnership, or as an executive of a corporation, obtained for such business, money or property on credit or as an extension or renewal of credit by making or publishing or causing to be made or published in any manner whatsoever a materially false statement in writing respecting his financial condition or the financial condition of such partnership or corporation * * *."

■ The courts in construing this section have held that not only must the financial statement be materially false, but that there must also have been such reliance upon it as to have induced the extension of credit. In Re Freeman (D.C.Cal.1955) 131 F.Supp. 437 and In Re Schweizer v. City Loan Co. (7th Cir. 1959), 271 F.2d 95.

■ The Referee's opinion clearly indicates that he found these factors present in the bankrupt's business relationship with Industrial Leasing Corporation, and our own review of the record reflects ample evidence to sustain the Referee's findings to this effect. Such conduct on the part of Mr. Brown constitutes a bar to his discharge under the Bankruptcy Act.

■ Furthermore, even if we found conflicting theories present in the record, the Referee's findings must be reviewed under the clearly erroneous standard prescribed by General Order in Bankruptcy No. 47 and Rule 52(a) of Federal Rules of Civil Procedure.

General Order in Bankruptcy No. 47 reads as follows:

"Unless otherwise directed in the order of reference the report of a referee or of a special master shall set forth his findings of fact and conclusions of law, and the judge shall accept his findings of facts unless clearly erroneous. The judge after hearing may adopt the report or may modify it or may reject it in whole or in part or may receive further evidence or may recommit it with instructions."

The pertinent part of Rule 52(a) of the Federal Rules of Civil Procedure provides:

* * * "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Larkins v. Sills (5th Cir. 1957), 377 F.2d 1, held that the court is under a duty to accept the Referee's findings of fact unless such findings are clearly erroneous. Citing General Order in Bankruptcy No. 47 and other cases. See also In Re Leach (W. D. Ark.1961), 197 F. Supp. 513, and Martin v. Mercantile Financial Corporation (5th Cir. 1968), 404 F.2d 886, wherein the Court said:

"Fed.R.Civ.P. 52(a) precludes reversal on a factual issue unless it is found to be clearly erroneous, Chaney v. City

of Galveston, 5th Cir. 1966, 368 F.2d 774." See also United States v. United States Gypsum Co. (1948), 333 U. S. 364, 68 S.Ct. 525, 92 L.Ed. 746. First National Bank of Clinton v. Julian (8th Cir. 1967), 383 F.2d 329.

In Morris Plan Industrial Bank v. Henderson (2nd Cir. 1942) 131 F.2d 975 beginning on page 976, the Court said:

"Everyone forms his conclusions from testimony, not only from the words which he hears the witnesses utter but from their appearance when they utter them; and the added weight to be attached to a referee's finding, or to a judge's (if he sees the witnesses) depends upon the fact that he has in effect had evidence before him which cold print does not preserve."

A recent Western District of Arkansas case 310 F.Supp. 226 (1970) Re: Fort Smith Acoustical Company, Bankrupt, has an excellent discussion of the "clearly erroneous" standard which must be applied to a Bankruptcy Referee's findings of fact.

Because the Referee is in a superior position to make the proper determination of any issue of fact, it has been held that he has broad discretion in granting or refusing discharge.

In Burchett v. Myers, .202 F.2d 920 (9th Cir. 1953) the Court said:

"The question of the right to a discharge is addressed to the sound discretion of the bankruptcy court, with the exercise of which, except in case of gross abuse, an appellate court will not interfere."

At the hearing on August 7, 1969 the bankrupt admitted that he had listed in his assets on the financial statements real estate of substantial value, which in fact he did not own, but which he was renting or leasing.

During the hearing on that date, Mr. Robert Case, Secretary-Treasurer of Industrial Leasing Corporation, in answer to questions, responded as follows:

Q. During the course of your dealings with Mr. Brown commencing the last part of September and the first part of October of 1967, did he furnish to you, or to your organization any financial data?

A. He did.

Q. I hand you what has been marked for identification as Exhibits 1 and 2 to this hearing, which Mr. Brown has identified as financial statements bearing dates of September 30, 1967, and February 9, 1968, and ask you if these are copies of the same information delivered to your organization by Mr. Brown.

A. They are.

Q. If you had known that the real estate which he had listed that he actually owned or held an equity position in was in fact leased property and that the facts as related on that financial statement were incorrect and untrue, would you have made arrangements to finance the operations with Mr. Brown that you did?

A. I doubt very seriously if we would have.

Q. Mr. Case, did you rely, on behalf of Industrial Leasing Company, upon these financial statements:

A. We did; I did.

Q. In making the loan or leases with Mr. Brown, did you rely on the information contained to show his financial picture?

A. Yes.

In light of the above legal authorities and the entire record in this cause we cannot say that the Referee's findings are "clearly erroneous" or that he abused his discretion in denying the discharge of the bankrupt, Bobby Earl Brown.

In reaching our decision we have given no weight to Paragraph VIII of the Referee's Supplemental Findings, since in a previous order he had stricken City National Bank's injection of this new matter into the proceedings.

In all other findings and in his conclusion of law we find the Referee to be

correct. In accordance therewith an Order denying and dismissing the Petition for Review and affirming the Referee's Order denying the discharge of the bankrupt will be entered on this date