In the Matter of Lawrence Mitchell ANDERSON, Debtor.

Hugh A. MINER, trustee in bankruptcy,[1]
Plaintiff,

v.

Lawrence Mitchell ANDERSON, Bernice Anderson, William M. Anderson, and Farmers and Merchants Bank of Hale, Defendants.

Hugh A. MINER, trustee in bankruptcy,[2]
Plaintiff,

v.

Lawrence Mitchell ANDERSON, Bernice Anderson, William M. Anderson, and Missouri Farmers Association, Inc., Defendants.

Hugh A. MINER, trustee in bankruptcy,[3]
Plaintiff,

v.

Lawrence Mitchell ANDERSON, Bernice Anderson, William M. Anderson, and Millbank Mills, Inc., Defendants.

Hugh A. MINER, trustee in bankruptcy,[4]
Plaintiff,

v.

Lawrence Mitchell ANDERSON, Bernice Anderson, William M. Anderson, and Community Bank of Chillicothe, Defendants.

Bankruptcy No. 81–00392–SJ.
Adv. Nos. 81–0381–SJ to 81–0384–SJ.

United States Bankruptcy Court,
W. D. Missouri,
St. Joseph Division.

July 10, 1981.

As Corrected July 17, 1981.

---

1. By order of the court of bankruptcy sitting en banc on June 17, 1981, Hugh A. Miner was appointed as the successor trustee in these cases.

2. See note 1, *supra*.

3. See note 1, *supra*.

4. See note 1, *supra*.

Gerald Liles, St. Joseph, Mo., Mitchell Anderson, Bernice Anderson and William M. Anderson, for Lawrence.

John C. Franken, Carrollton, Mo., for Farmers & Merchants Bank of Hale.

Steven E. Faber, Columbia, Mo., for Missouri Farmers Association, Inc.

Robert Cowherd, Chillicothe, Mo., for Community Bank of Chillicothe.

Hugh A. Miner, St. Joseph, Mo., for plaintiff.

ORDER CONSOLIDATING THE ABOVE ADVERSARY ACTIONS FOR THE PURPOSE OF DETERMINATION AND FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT DENYING THE PLAINTIFF'S COMPLAINTS FOR TURNOVER ORDERS EXCEPT WITH RESPECT TO THE SUM OF $123.97 IN THE COMMUNITY BANK OF CHILLICOTHE AND THE SUM OF $26.53 FROM THE DEFENDANT LAWRENCE MITCHELL ANDERSON

DENNIS J. STEWART, Bankruptcy Judge.

A former trustee in bankruptcy has brought four separate adversary actions to recover money and property which he alleges to be property of the estate within the meaning of section 541 of the Bankruptcy Code. Thus, in his several complaints in these actions, the plaintiff seeks turnover of (1) deposits of money in a bank account in the Farmers and Merchants Bank of Hale, Missouri, in the sum of $17,601.28; (2) 1,151.56 bushels of soybeans; (3) an additional 2,026 bushels of soybeans; and (4) another deposit of money in a bank account in the Community Bank of Chillicothe in the amount of $690.43. In their responses to the complaints, the defendants assert, *inter alia*, that the property thus sought by the estate in bankruptcy is entirety property which is not property of the estate within the meaning of section 541 of the Bankruptcy Code.

Although the court issued its orders directing full pretrial discovery and briefing, the parties agreed to an expedited trial date and, accordingly, the hearing of the merits was held by the court sitting without a jury on May 11, 1981, in Kansas City, Missouri. The former trustee then appeared personally and as his own counsel. The defendants also appeared personally and by counsel.[5]

### Findings of Fact

The evidence which was then offered in respect of the issues made by the four complaints was lengthy and voluminous. Nevertheless, the material facts which the court has been able to extract from the great mass of evidence through protracted scrutiny of it are relatively simple.

The $690.43 which is sought by the estate in bankruptcy is money deposited in the Community Bank of Chillicothe, bearing account number 000299. As of February 23, 1981 (some 17 days after the date of the filing of the petition for relief by the debtor in this case), the bank account had the

---

5. The defendants Anderson all appeared by counsel, Gerald Liles, Esquire, as well as personally. Steven E. Faber, Esquire, appeared on behalf of the Missouri Farmers Association, Inc. John C. Franken, Esquire, appeared as counsel for the Farmers and Merchants Bank of Hale. And Robert Cowherd, Esquire, appeared as counsel for the Community Bank of Chillicothe.

balance which is sought, that of $690.43. It was later reduced by means of a check written by the debtor on February 25, 1981, of $26.53, and another check written by him on February 26, 1981, in favor of the Internal Revenue Service in the sum of $539.83. The balance in the account as of the date of the hearing was $123.97. In respect of this account, the evidence showed that the account was in the name of L. M. or Bernice or Trudy Anderson and that all of the checks which were written on the account were written only in the name of the debtor Lawrence Mitchell Anderson.[6] Thus, while the defendant Bernice Anderson appears presently to claim an interest in the bank account, the evidence shows no contributions by her and her continuous acquiescence in withdrawals only and exclusively in the name of the debtor.

The sum of $17,601.28 which is sought by the plaintiff on behalf of the estate in bankruptcy is on deposit in the Farmers and Merchants Bank of Hale. This amount is demonstrated by the uncontradicted evidence to be the proceeds of the debtor's sale of certain sheep which, as respects these proceeds, were held as a tenancy by the entirety by Lawrence Mitchell Anderson and his wife, Bernice Anderson. Mrs. Anderson helped care for the sheep and thus contributed to the money in the bank account. The signature card for this bank account shows that it is in the name of "L. M. or Bernice Anderson or William M. Anderson." According to the uncontradicted evidence, William M. Anderson, although his name is on the signature card, claims no interest in this bank account. The agreement signed by the debtor and Bernice Anderson is to the effect that "all funds now, or hereafter deposited in this account are,

and shall be our joint property and owned by us as joint tenants with right of survivorship." Mrs. Anderson admitted in the course of her testimony that she had previously, in deposition questions asked her in connection with an unrelated civil action, denied any interest in this bank account.

Finally, with respect to the soybeans, the evidence showed that they were grown on properties leased from Norman Eugene "Bud" Neptune, Louis Bird, and Melvin A. Watkins; that the leases were oral and not in writing; that the debtor was the only person who negotiated the leases with the respective lessors, but he intended that the portions of the proceeds of the soybeans which he was due under the respective lease agreements should be property of him and Bernice Anderson, his spouse, in tenancy by the entirety;[7] that, accordingly, he had previously answered in response to a deposition question that "she takes part of my share, yes"[8]; that Bernice Anderson participated in the growing and harvesting of the soybeans and generally was considered to be a tenant by the entirety in any and all proceeds of the farming operations which she undertook with her husband, the debtor in this case; that the spouse of the debtor, Bernice Anderson, shares his liability on all the farming operations which he and she jointly undertake; and that she does not "usually," however, participate in decision-making.

### Conclusions of Law

■ Based upon the above findings, this court can only conclude that all the property, with the exception of the one bank account with respect to which the court orally issued its order and judgment

---

**6.** The evidence converges on this crucial point. Ms. Anderson testified to the effect that the debtor Lawrence Mitchell Anderson wrote all the checks on this account.

**7.** The plaintiff, in the hearing of the actions at bar, produced the lessors as witnesses and all of them testified that the lease agreements were made orally with the debtor only. But, even if this is so, a tenancy by the entirety may be created by a transfer from a husband to himself and his wife. See, e. g., *Matter of*

*Gervich*, 570 F.2d 247 (8th Cir. 1978). The evidence in this action tends to show that the wife's caring for the crops may have been a sufficient consideration for the transfer. And the former plaintiff did not state or show any of the elements of a fraudulent transfer under section 548 of the Code or a preference under section 547.

**8.** See note 7, *supra.*

at the conclusion of the evidentiary hearing, is in a tenancy by the entirety composed of the debtor and his spouse. Thus, with respect to the crops of soybeans produced by the properties which were leased from Neptune, Bird, and Watkins, respectively, the evidence adduced by the defendants to the effect that the proceeds were intended to be in a tenancy by the entirety is wholly uncontradicted. In this respect, the fact that Mrs. Anderson was not a party to the lease agreements with Neptune, Bird, and Watkins is immaterial when it was undisputably the debtor's intention that his share from the leases should be enjoyed by himself and his wife in a tenancy by the entirety.[9] It is fully within his power to accept those proceeds only in the tenancy by the entirety which, according to the uncontradicted evidence, had long existed between him and his wife. It is well established that the question of whether a tenancy by the entirety exists depends upon the intention of the parties.[10] In this case, the intention of the parties that these crops and any proceeds therefrom constitute entirety property is clear and uncontroverted.

▪ The same is true in respect of the bank account which contained some $17,601.28 as of the date of the filing of the petition for relief in this case. The plaintiff has gone to some length to demonstrate that, in answers to deposition questions in an unrelated civil action, Mrs. Anderson denied any interest in this bank account. In light of the legal concept that the entiretyship is an entity which is distinct from the persons who comprise it, her response may not have been false or in any respect inconsistent with her claiming that the account is in a tenancy by the entirety.[11] But, even if it were, whether the account is deemed to be held by the entireties "depends upon the form, manner and circumstances under which the joint bank account was established and maintained." *Leuzinger v. Merrill Lynch, Pierce, Fenner and Smith*, 396 S.W.2d 570, 578 (Mo. en banc 1965). In this case, as the above findings clearly demonstrate, the signature card and agreement provide that the debtor and his spouse intended to hold the account jointly. "(A) deposit in the joint names of a husband and wife is presumed to be a tenancy by the entirety." Id. at 580. "The fact that an estate by the entirety is in fact a joint ownership of a husband and wife brings confusion unless we keep in mind that in spite of all legislative enactments touching joint tenancy, an estate in entirety in Missouri . . . remains as at common law." *Cullum v. Rice*, 236 Mo.App. 1113, 162 S.W.2d 342, 344 (1942). "(T)he statute relative to joint deposits or other similar statutes does not affect common law estates by the entirety where property is in the name of a husband and his wife. The presumption is that it is an estate by the entirety." *State Bank of Poplar Bluff v. Coleman*, 241 Mo.App. 600, 240 S.W.2d 188, 190 (1951). Nor do words which would otherwise create a joint tenancy with right of survivorship serve to rebut this presumption. See *Nelson v. Hotchkiss*, 601 S.W.2d 14, 19 (Mo. en banc 1980), and cases and authorities there cited. And a checking account in the name of a husband "or" his wife, as in the action at bar, is held to be "in an estate by the entirety whether the husband or the wife or both furnished the monies that went into the account." *Fulton v. Fulton*, 528 S.W.2d 146, 158 (Mo.App.1975). Thus, the face of the signature card and the agreement itself demonstrate that the account was and is in a tenancy by the entirety. There is no clear, cogent and convincing evidence to rebut the presumption in favor of tenancy by the entirety. *Nelson v. Hotchkiss, supra*, at 19.[12] "If the . . . account is accompanied

9. See note 7, *supra*.

10. See, e. g., *State ex rel. State Highway Commission v. Morganstein*, 588 S.W.2d 472, 477 (Mo. en banc 1979).

11. "The peculiar characteristic of this estate is that husband and wife hold property not as separate individuals but as one person, each holding the whole." *Cann v. M & B Drilling Company*, 480 S.W.2d 81, 84 (Mo.App.1972).

12. See *Merrill Lynch, Pierce, Fenner and Smith, Inc. v. Shackelford*, 591 S.W.2d 210 (Mo.App.1979).

by an integrated and unambiguous agreement, such an agreement constitutes the intention of the parties which may not be varied by parol evidence." *Carroll v. Hahn,* 498 S.W.2d 602, 607, n. 1 (Mo.App.1973).

■ The parol evidence rule, however, does not bar evidence of a subsequent termination of the joint tenancy or tenancy by the entirety by acquiescence in one depositor's exercise of an exclusive authority to draw any or all the monies from the account. "The husband and wife can by consent, agreement, or acquiescence change the character of entirety property." *Cooper v. Freer,* 385 S.W.2d 340, 345 (Mo.App. 1964). Therefore, the smaller bank account, in which the evidence only shows that the debtor had authority to, and did exercise the right, to withdraw any and all monies in the account must be held to pass to the estate. This is so because the parties are shown to have agreed by acquiescence that he should exercise the exclusive right of withdrawal. According to Mrs. Anderson's testimony in the action at bar, the debtor did all the checkwriting on this account. Under Missouri law, the parties to a joint account may agree that "money so deposited may be paid to ... only one of them." *Leuzinger v. Merrill Lynch, Pierce, Fenner and Smith, supra,* at 579. That is the case at bar, by the admission of Mrs. Anderson herself. Therefore, the monies in this account should be turned over to the trustee in bankruptcy.[13] See 4A Collier on Bankruptcy para. 70.18, p. 222, n. 43j (1978), to the following effect:

> "When either party with an interest in a joint bank account can draw against the entire balance, it seems that the trustee of either should be able to claim the whole account under section 70a(3) and (5) (now section 541 of the Code)."

## II

■ A determination that the greater part of the property is entirety property, however, does not end the matter. The plaintiff may still contend that entirety property should be brought into the bankruptcy estate under the sweeping provisions of section 541 of the Bankruptcy Code which purport to include as property of the estate "all legal or equitable interests of the debtor in property as of the commencement of the case." This section, however, "is not intended to expand the debtor's rights against others more than they exist at the commencement of the case." Legislative History to section 541 of the Bankruptcy Code. And, as of the commencement of this bankruptcy case, the debtor had no rights against his wife in the property apart from her consent or acquiescence and could not have conveyed it to himself or others apart from her joining or acquiescing in the conveyance. "One of the incidents of a tenancy by the entirety is that any act affecting the title to property thus held must be by joint act ... The husband, acting alone, may not bind the wife by a sole contract ... because the estate is not held by moieties or halves, but both tenants hold and own the entire estate as a single person." *Leuzinger v. Merrill Lynch, Pierce, Fenner and Smith, supra,* at 580. Thus, a tenancy by the entirety, as defined by the law of the State of Missouri, cannot be regarded as a legal or equitable interest of the *debtor* as of the commencement of the case under title 11 of the Code.

Decisions have been adverted to which hold that the debtor can have an interest in a tenancy by the entirety which passes into the bankruptcy estate under section 541, *supra.* But these cases have also held that the question of the nature of the entiretyship must be resolved by reference to the law of the state where the property rights are held. See *In re Ford,* 3 B.R. 559, 564, 565 (Bkrtcy.D.Md.1980), to the following effect:

**13.** Because the payment of $539.93 went to the Internal Revenue Service on account of what would otherwise have been a priority claim in this chapter 7 case, the plaintiff waived at trial any right to recover this amount. Subtracting that amount from the $690.43 which was in the bank account as of the date of the petition for relief leaves $150.50 due the estate. Of this, $123.97 can be paid from the monies in the bank account and the sum of $26.53 from the debtor.

"(T)he question of whether a tenancy by the entirety interest as defined by Maryland law is a legal or equitable interest of the debtor under section 541(a) is . . . a federal question. However, in the absence of a federal law of property, the existence and nature of the debtor's interest in tenants by entireties property are determined by nonbankruptcy law . . . Accordingly, resolution of the issue of whether a debtor who holds property as a tenant by the entirety has an interest which would become an asset of the estate requires a careful examination of Maryland law concerning the nature of a tenancy by the entirety."

In that case, under Maryland law, it was determined that the debtor had "equitable interests . . . in use, possession, income, and survivorship" which passed to the bankruptcy estate under the provisions of section 541, *supra*. A close examination of the law of Missouri, however, demonstrates that, in these material respects, one of the tenants in entirety property does not possess any rights to the exclusion of his spouse. Unlike the Maryland version of tenancy by the entirety, the Missouri version has no right of survivorship as such. "Although the surviving spouse in an estate by the entirety becomes the sole owner of the property on the death of the other spouse, he or she does not do so by survivorship as would be the case in a joint tenancy. 'In an estate of the entirety the husband and the wife during their joint lives each owns, not a part, or a separate or a separable interest but the whole, and therefore the death of one leaves the other still holding the whole title as before, with no one to share it." *Nelson v. Hotchkiss, supra*, at 20. "An estate by the entirety has no moieties. The husband and wife, by reason of their legal unity by marriage, take the whole estate as one person. Each spouse holds the entirety, and upon death of one the entire estate belongs to the other, not by virtue of survivorship, but by virtue of the title that vested under the original limitation." *Crosby v. United States*, 298 F.Supp. 172, 173 (E.D.Mo.1969).

It follows that, under Missouri law, the debtor himself had no right to use or enjoyment or the taking of incomes from the property. Those rights could only be enjoyed by the "one person" deemed to comprise the "entiretyship"—the "legal unity" of husband and wife. "The essential characteristic of the tenancy by the entirety has always been and still is the idea that each tenant owns the whole estate but no divisible part . . . Neither spouse has exclusive management power; neither may encumber or adversely affect the estate without the other's assent . . . Neither spouse can act alone to convey the other's property interest . . . No lien may arise from one spouse's pledge of entirety property as security for a loan." *Kaufman v. Krahling*, 519 S.W.2d 29, 31 (Mo.App.1975). These principles make it signally clear that the debtor, without his spouse, has no legal or equitable interest in entirety property in Missouri as of the date of the commencement of a case under title 11 of the Bankruptcy Code. "(T)he estate is not held by moieties or halves, but both tenants hold and own the entire estate *as a single person*." *Leuzinger v. Merrill Lynch, Pierce, Fenner & Smith, supra*, at 580. (Emphasis added)

Again, in *Matter of Koehler*, 6 B.R. 203 (Bkrtcy.M.D.Fla.1980), Florida law was taken into account in holding that property held by the entireties was part of the debtor's estate under section 541, *supra*.[14] It is further noted in that case that the legislative history of the new Code states that:

"With respect to . . . co-ownership interest, such as tenancies by the entireties, joint tenancies, and tenancies in common, the bill does not invalidate the rights, but provides a method by which the estate *may* realize on the value of the debtor's interest in the property while protecting the other's rights. The trustee is permitted to realize on the value of the property by being permitted to sell it without obtaining the consent or waiver of rights by the spouse of the debtor or the co-owner, as may be required for a complete sale

14. 6 B.R. at 203, 204.

under applicable State law. The other interest is protected under H.R. 8200 by giving the spouse a right of first refusal at a sale of the property, and by requiring the trustee to pay over to the spouse the value of the spouse's interest in the property . . ." (Emphasis added.)

H.Rep. 95–595, p. 177, U.S.Code Cong. & Adm.News 1978, p. 6137. The emphasized permissive language in that legislative history, however, must necessarily mean that, in states like Missouri, where the entirety-ship gives the debtor, standing alone, no legal or equitable right, the entirety property cannot be deemed to have passed into the estate in bankruptcy. To conclude otherwise would be to violate the maxim otherwise plainly and unequivocally expressed in the legislative history to the effect that section 541 cannot be employed to enlarge the rights of the debtor beyond those which existed as of the date of the commencement of the case. Thus, in Missouri, it is clear that the debtor had no right to sue his spouse for termination of the entiretyship or for its partition, absent her consent or acquiescence. If he had such a right, the decision in this action might be warrantably different.[15] But, because he had no such right, neither does the estate in bankruptcy.

Thus, for the reasons stated above, because of the peculiar nature of the tenancy by the entirety in Missouri, it must be held that the trustee cannot recover in this action, except with respect to the bank account in regard to which the evidence shows an acquiescence by the spouse in the exercise of exclusive rights by the debtor.

### III

The court of bankruptcy is bound to follow the legal principles which are asseverated above in determining the actions now at bar. It must be noted that, in some respects, the unsatisfactory situation which existed under the old Bankruptcy Act, and described in the following language in *In re Magee*, 415 F.Supp. 521, 527 (W.D.Mo.1976), will continue to exist:

"In Missouri, entirety property . . . is not subject to administration in the bankruptcy proceeding . . . (But) 'although the bankruptcy proceeding has brought no interest in the estate by the entireties into court for the benefit of the creditors . . ., (the debtor's) discharge in bankruptcy will remove that entire property beyond the reach of creditors to subject it to their claims . . . it will result in legal fraud i. e. the effective withholding of the property from the reach of those entitled to subject it to their claims, for the beneficial ownership and possession of those who created the claims against it.'"

The only remedies which remain to affected creditors with respect to the money and property held by the entirety are a complaint to stay discharge until a creditor or creditors can obtain a judgment or judgments against the debtor and his spouse and levy upon that judgment lien against the entirety property or a complaint objecting to discharge. In either case, the creditors' successful pursuit of the remedy will be that the creditor holding a joint obligation of the debtor and his spouse who is first to obtain judgment and a writ of execution will thereby gain the rights against all the entirety property. Thus, in all likelihood, one or two of the creditors of the Andersons will obtain the property held in the tenancy by the entirety to the exclusion of the other creditors. Whereas, if the property were distributed according to the rules governing bankruptcy distribution, it would be par-

15. As it would also be if the creditors had a right to levy against entirety property or any part thereof on account of an obligation of only one of the spouses. See *In re Weiss*, 4 B.R. 327, CCH Bankruptcy Law Reporter para. 67,-476 (Bkrtcy.S.D.N.Y.1980). See also and compare *In re Barsotti*, 7 B.R. 205, 210 (Bkrtcy.W. D.Pa.1980), in which the court held, under Pennsylvania law which in all material respects appears to be the same as Missouri law, that "Based on the House and Senate Judiciary Committee Reports, House and Senate Floor Statements, and the Bankruptcy Commission Report, the intent of § 541(a)(1) is that the estate includes all property of the debtor including tenants by the entireties property." That legislative history, however, prominently contains the proviso that "only the debtor's interest in such property becomes property of the estate." 7 B.R. at 209. Under Missouri's version of the tenancy by the entirety, the *debtor* has no such interest.

celled out among the creditors of the debtor *pro rata* and thus, presumably, more equitably.

Nevertheless, under the governing principles of bankruptcy law and those of Missouri law, for the foregoing reasons, the result which is here reached is exactingly compelled. The court cannot be wiser than the law.

### IV

It is therefore, for the foregoing reasons,

ORDERED that the above adversary actions be, and they are hereby, consolidated for the purposes of rendering a final judgment. It is further

ADJUDGED that the complaints of the plaintiff for turnover orders be, and they are hereby, denied, except with respect to the $123.97 in the Community Bank of Chillicothe which must forthwith be turned over to the trustee in bankruptcy and the sum of $26.53 which the defendant Lawrence Mitchell Anderson must forthwith turn over to the trustee in bankruptcy. The undersigned is authorized to state that the other members of this court, Chief Judge Barker and Judge Pelofsky, concur with the conclusions reached herein.