In the Matter of Phillip Anthony SIMONE, Debtor.

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff,

v.

Phillip Anthony SIMONE, Defendant.

Bankruptcy No. 82–03383–1.
Adv. No. 83–0021–1.

United States Bankruptcy Court, W.D. Missouri, W.D.

Nov. 14, 1983.

Gordon D. Gee, Rich, Granoff, Levy & Gee, Kansas City, Mo., for plaintiff.

James R. Derting, Kansas City, Mo., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND FINAL JUDGMENT DENYING THE DEFENDANT'S DISCHARGE IN BANKRUPTCY

DENNIS J. STEWART, Chief Judge.

Plaintiff seeks the denial of the defendant's discharge in bankruptcy under section

727 of the Bankruptcy Code for various reasons, including the defendant's allegedly making false statements in connection with these bankruptcy proceedings and allegedly failing adequately to explain the diminution of his assets to the point of insufficiency to meet his outstanding debts.[1]

The action came on before the bankruptcy court for hearing on July 27, 1983, whereupon the plaintiff appeared by counsel, Gordon D. Gee, Esquire, and the defendant appeared personally and also by counsel, James R. Derting, Esquire. The evidence which was then adduced demonstrated the following material facts. The debtor failed to schedule as one of his assets his partial interest in his wife's savings account which had a balance of $107.59 as of the date of bankruptcy.[2] Similarly, he failed to mention his interest in his wife's savings account on his statement of affairs. Nor did he correctly schedule as being among his assets the real property which was his residence and which, according to the evidence,[3] was jointly owned by him and his wife in a tenancy by the entirety. In this regard, the plaintiff contends that he failed to value the property at what it was actually worth.[4] The same contention is asserted by the plaintiff in respect to the scheduling of a certain Lincoln automobile—that it is not properly valued and scheduled—and certain rings and clothing.[5] Certain trans-

1. The complaint which was initially filed by the plaintiff on January 7, 1983, is in two counts, the first of which alleges that plaintiff holds "an unsecured claim in the amount of $42,481.65 plus interest at the rate of 9% from and after September 21, 1981" and that "Defendant's indebtedness to plaintiff resulted from the obtaining of money, property and services by defendant through false pretenses, a false representation or actual fraud." The second count generally alleges that "(d)efendant has failed to explain satisfactorily, before determination of denial of discharge, his loss of assets or deficiency of assets to meet the debtor's liabilities."

2. In its posttrial brief, the plaintiff states that "(t)his savings account has been maintained constantly for the entire two year period immediately preceding the filing of the original petition herein. At trial, defendant candidly admitted his interest in this savings account in response to a question from plaintiff's counsel, but made absolutely no effort to explain why he failed to include same in his statement of financial affairs." But the slight value involved may, under the applicable law, excuse the omission. "Generally speaking, a debtor who, without fraud, omits from his sworn schedules property of no value is not guilty of making a false and fraudulent oath. Thus when he omits securities which are absolutely worthless his discharge will not be refused. It has been suggested that failure to schedule exempt property does not constitute a false oath. Omission of property of trivial value sometimes has been treated as immaterial." 4 Collier on Bankruptcy para. 727.-04, pp. 727-53, 727-54 (1983). Further, it appears conceivable that the property omitted from the schedules may have been entirety property which would not be a part of the estate in bankruptcy under the rule of *Matter of Anderson,* 12 B.R. 483 (Bkrtcy.W.D.Mo.1981).

3. In this regard, the vice in the scheduling was a mis-statement of market value. As the plaintiff summarizes in its posttrial brief, "(i)n schedule A–2, defendant listed the market value of his home as $62,000.00. Ten months' earlier, in January 1982, defendant listed this same house in his sworn Credit Application to First National Bank of Gladstone as having a value of $125,-000.00 ... During that same month, January 1982, an employee of First National Bank of Gladstone appraised this same home at $118,-000.00." But the defendant's contention is that the error, if any, is immaterial when the residence was the entirety property of him and his spouse. "(I)n states like Missouri, where the entiretyship gives the debtor, standing alone, no legal or equitable right, the entirety property cannot be deemed to have passed into the estate in bankruptcy." *Matter of Anderson,* 12 B.R. 483, 490 (Bkrtcy.W.D.Mo.1981).

4. See note 3, *supra.*

5. The evidence in this regard is well and accurately analyzed in the plaintiff's posttrial brief as follows: "In Schedule B–2, defendant makes several false oaths or accounts in connection with the market value of his personal property as of October 28, 1982. In paragraph c., defendant swears that the market value of his interest in his household furniture and goods without deduction for secured claims or exemptions was $200.00. However, in Plaintiff's Exhibit IC, the *financial statement submitted to First National Bank of Gladstone in January 1977,* defendant swore that his furniture and fixtures cost $14,-000.00, had depreciated $7,000.00 and were in excellent condition. More graphically, in paragraph e. of Schedule B–2, defendant swore that the value of his wearing apparel *and* his jewelry without deduction for secured claims or exemptions was $200.00. Nine months earlier, in Jan-

fers and other transactions are also said not to be properly reported or scheduled.[6]

The evidence which was adduced in the hearing of this action also clearly showed that, as of January 13, 1982, when the defendant rendered a financial statement to the plaintiff, he had assets of $179,-000.00 and liabilities of $23,200.00. But as of the date of bankruptcy, October 28, 1982, his assets scheduled were of a magnitude of $19,271.00 and his liabilities $123,-500.67. The defendant, in explaining this diminution of assets, offered only a general explanation to the effect that he had suffered gambling and market losses.[7]

uary 1982, defendant swore in his Credit Application to First National Bank of Gladstone ... that he personally owned in his individual name jewelry with a value of $30,000.00. At trial, defendant acknowledged the entries in Plaintiff's Exhibit 2A and his sworn signature thereto. When asked by plaintiff's counsel if he had sold any of his jewelry since January 1982, defendant first answered no. Later, he attempted to change his testimony by saying that he might have sold some unspecified jewelry to pay off some unspecified gambling debts. When questioned as to what jewelry he sold and for what price, defendant testified that he could not remember any of the specifics but it wasn'tvery much. Defendant has totally failed, as a matter of law, to explain what happened to the $30,-000.00 worth of jewelry which he owned in January 1982, nine months before the filing of his original petition herein. Finally, in paragraph f. of Schedule B-2 defendant falsely lists the market value of his interest in his 1980 Lincoln Continental without deduction for secured claims or exemptions as $500.00. ... (I)n January 1982, defendant swore that the market value of the 1980 Lincoln was $14,000.00 ... and last month he sold said automobile for $7,100.00. Clearly, the $500.00 market value listed in paragraph f. of Schedule B-2 constitutes a false oath." In respect of these admitted errors in scheduling, the defendant seeks to explain them in sundry ways: repairs to the automobile, fluctuations in value, and the fact that he considered all or nearly all the property under these headings to be in a tenancy by the entirety with his spouse. If the property was really in a tenancy by the entirety, any misrepresentation or false oath would not be material. "The false oath must have related to a *material* matter. Testimony as to property which can have no bearing upon the estate's condition is not material in a proceeding under the Act." 1A Collier on Bankruptcy para. 14.25, p. 1338 (1976). Evidence was not adduced on the correctness or incorrectness of the defendant's professed belief that all this property was held in a tenancy by the entirety. The court therefore has no basis for concluding that the belief was not held in good faith.

6. The plaintiff's posttrial brief summarizes plaintiff's contentions, in terms of the evidence in this action, as follows: "In answer to question 11 on his statement of financial affairs, defendant totally failed to list any of the repayments he had made on loans from First National Bank of Gladstone and from Sentinel Federal Savings & Loan Association during the year immediately preceding the filing of the original petition herein. Therefore, he also failed to disclose the name and address of the lenders, the amounts of the loans and when the loans were received ... defendant made absolutely no effort to explain why he failed to include any of these loan repayments in his answer to question 11.... In answer to question 12.b. on his statement of financial affairs, defendant totally failed to list the transfer or any other disposition of real or tangible personal property during the year immediately preceding the filing of the original petition herein. Rather, he swore that there had been *no* such transfers or dispositions. However, at trial, again in response to questioning by plaintiff's attorney, defendant admitted that in January 1982 or later he sold his 1978 Mercury Cougar to his sister for $3,300.00. Defendant listed this car among his assets in the sworn Credit Application which he admitted having signed and submitted to First National Bank of Gladstone in January 1982 ... Defendant also admitted at trial that, as represented in Exhibit 2A, this Mercury was owned in his name only and had a value of $5,000.00. Again, defendant made absolutely no effort to explain why he failed to include the sale of his 1978 Mercury in his statement of financial affairs. Defendant also presented no evidence showing what happened to the $3,300.00 purchase price." The evidence which has been adduced, however, fails to show that the payments made on account were within the 90 day period next preceding bankruptcy or otherwise were preferential or fraudulent. And it has been held that such transfers as do not affect the estate need not be reported on the schedules. See 4 Collier on Bankruptcy para. 727.-04(2), p. 727-56, n. 32 (1983). And more crucially, it has not been shown that the defendant could not have believed these transfers to have been immaterial to the estate. Accordingly, the court cannot conclude that the requisite intent is present in this case, as distinct from the cases cited and relied upon by the plaintiff in which the fraudulent intent was explicitly held to be present.

7. In his posttrial brief, the defendant contends that he "did explain his loss of assets due to an addiction to gambling and speculation in the futures market with plaintiff's company. De-

### False Oath or Statement

 The making of a false oath or statement in connection with bankruptcy proceedings does not, without more, warrant the denial of a discharge in bankruptcy. Rather, it is also necessary to demonstrate on attendant fraudulent intention. "In order to justify a refusal of discharge ... it must be shown that the acts complained of were done with an intent to hinder, delay, or defraud his creditors. This intent, moreover, must be an *actual fraudulent intent* as distinguished from constructive intent." 1A Collier on Bankruptcy para. 14.47(1), pp. 1410, 1411 (1978) (Emphasis added.) Cf. *In re Adlman*, 541 F.2d 999 (2d Cir.1976). The same principle applies with respect to failure to schedule property. "Without proof of the fraudulent intent, the specifications alleging this ground of objection to discharge must be dismissed. Failure to schedule ... property belonging to the bankruptcy estate ... is not necessarily 'knowingly and fraudulently' concealing it." 1A Collier on Bankruptcy para. 14.23, pp. 1328, 1328.1 (1978). The intent must be a subjective, actual intent demonstrated by clear evidence. See, e.g., *In re Adlman, supra,* at 1003–04 to the following effect:

"More specifically, in order to deny a discharge under section 14c(4) of the Act, 11 U.S.C. § 32(c)(4), the court must find that property was transferred or removed with actual intent to hinder, delay or defraud creditors. *Halpern v. Schwartz,* 426 F.2d 102, 104 (2d Cir. 1970). Constructive fraudulent intent, such as would suffice to set aside a transfer under section 67 of the Act, 11 U.S.C. § 107, or under section 70e, 11 U.S.C. § 110e, cannot be the basis for the denial of discharge.

"The distinction between constructive intent involved in a transfer without consideration while insolvent and 'actual intent' to hinder, delay or defraud creditors is well recognized, though not always easy of definition. The difficulty of proving 'actual intent' to defraud was made manifest in *Feist v. Druckerman,* 70 F.2d 333 (2d Cir.1934), a decision concurred in by Judges Learned Hand, Swan and Augustus N. Hand.

"The reluctance of the courts to find actual intent by a bankrupt to defraud his creditors is illustrated by decisions holding that the exchange by the bankrupt, on the eve of bankruptcy, of nonexempt property for exempt property, is not itself a fraud on his creditors and cannot be the basis for a denial of a discharge absent extrinsic evidence of fraud. *Forsberg v. Security State Bank,* 15 F.2d 499, 502 (8th Cir.1926). See *Wudrick v. Clements,* 451 F.2d 988, 989–90 (9th Cir.1971); *Grover v. Jackson,* 472 F.2d 589, 590 (9th Cir.1973). "As the court stated in *Forsberg v. Security State Bank, supra,* 15 F.2d at 502, 'before the existence of [any] fraudulent purpose can be properly found, there must appear in evidence some facts or circumstances which are extrinsic to the mere facts of conversion of nonexempt assets into exempt and which are indicative of such fraudulent purpose.' "

In this action, some of the articles which were not scheduled were of minimal value. In such instances, the authorities hold that the low or negligible value of the article

---

fendant's schedule includes several Las Vegas casinos where defendant had gambling losses. Plaintiff has refused to accept that defendant cannot repay plaintiff and is manipulating figures frantically in an effort to bestow some form of financial ability on defendant so he can pay his debt to plaintiff." But, in determining whether an explanation of losses of assets is sufficient, it is said that "(t)he debtor probably must explain his losses or deficiencies of assets in such manner as to convince the court of good faith and businesslike conduct ... An explanation that is based primarily upon an estimate of

the debtor founded upon nothing by way of books, records or otherwise has been held unsatisfactorily. Even though the underlying facts referred to by a debtor may suggest a plausible explanation, the testimony may be so general as to be insufficient. More is required of the debtor in the way of explanation than mere generalities." 4 Collier on Bankruptcy para. 727.08, pp. 727–63, 727–64 (1983). And the gambling losses reported in the schedules are in no way sufficient to account for the drastic reduction in assets from January 1982 to the time of the filing of the bankruptcy proceedings.

not scheduled or mis-scheduled negatives any fraudulent intent. "The failure to schedule apparently worthless ... items of personal property of little or no value is ordinarily not accompanied by a fraudulent intent." 1A Collier on Bankruptcy para. 14.23, pp. 1329, 1330 (1978). "The fact that the property transferred or concealed is of small value tends to negative fraudulent intent." *Id.*, para. 14.47, p. 1412. Further, as for those items of property which, as of the date of bankruptcy, were held by the defendant and his spouse in a tenancy by the entirety, the law is to the effect that those items are not part of the estate in bankruptcy. *Matter of Anderson*, 12 B.R. 483 (Bkrtcy.W.D.Mo.1981). Thus, there exists a reasonable excuse for not scheduling them which prevents the bankruptcy court from making any finding of a fraudulent intention such as is necessary to deny the discharge in bankruptcy. Further, any misstatements regarding such property are not material to estate administration and thus cannot constitute material false statements which would justify a denial of discharge.[8] And, in this case, the misstatements were not of such magnitude as would merit the denial of discharge.[9] Therefore, the plaintiff's request to deny discharge on the above grounds must be denied.

## II

### *Failure To Explain Diminution Of Assets*

The substantial loss of assets—from $179,000.00 to $19,271.00 in ten months—has not been satisfactorily explained with sufficient particularity. In regard to this exception, the cases and authorities uniformly hold that, when the plaintiff demonstrates any substantial diminution of assets, the burden shifts to the defendant debtor to produce evidence which satisfactorily explains the diminution. "Under Rule 407 the plaintiff has the

burden 'of proving the facts essential to his objection.' ... [T]he plaintiff will be required to go beyond a showing of 'reasonable grounds' and adduce proof of the facts which will establish that the debtor has committed the act charged before the burden of going forward with the evidence will shift to the debtor." 4 Collier on Bankruptcy, para. 727.03, p. 727–47. See also *Matter of Reed*, 700 F.2d 986, 992, 993 (5th Cir.1983). ("While the burden of persuasion rests at all times on the creditor objecting to discharge, it is axiomatic that the debtor cannot prevail if he fails to offer credible evidence after the creditor makes a prima facie case. The creditor's burden does not obviate the necessity that the debtor provide a satisfactory explanation of the loss of assets."); *In re Nazarian*, 18 B.R. 143, 149 (Bkrtcy.D.Md.1982) ("Once the plaintiffs show that assets have disappeared, or cannot be traced, the burden of persuasion shifts to the debtor to explain his financial transactions."); *Matter of Ramos*, 8 B.R. 490, 494 (Bkrtcy.W.D.Wis. 1981) ("The plaintiff ... must prove facts which will establish that the debtor has committed the act charged before the burden of going forward with the evidence will shift to the debtor."). In determining whether the debtor has gone forward with a satisfactory explanation of the loss of assets, it is said that a general and conclusionary explanation is insufficient. "An explanation which is based mostly upon an estimate of the bankrupt, founded upon nothing by way of verification or affirmation by means of books, records or, otherwise has been held unsatisfactory." 1A Collier on Bankruptcy, para. 14.60, p. 1437 (1978). Further, the intention of the debtor is an immaterial issue with respect to this objection to discharge. "[I]t appears that the ... element of intent ... is not required here." 1A Collier on Bankruptcy, para. 14.59, p. 1433. *Matter of Foglesong*, In Bankruptcy Nos. 76–B–222–SJ and 76–

---

**8.** See notes 3 through 8, *supra.*

**9.** It is to be remembered that the granting of a discharge remains within the discretion of the court, even if grounds for the denial of dis-

charge are demonstrated; that the demonstration of a ground or grounds for denial of discharge is a necessary, but not sufficient, condition to the denial of discharge.

B-223-SJ (Bkrtcy.W.D.Mo. July 6, 1977), affirmed, Civil Action No. 77-6068-CV-SJ (W.D.Mo. April 27, 1978). In this action, without some particularity, the explanation tendered by the debtor is simply insufficient [10] and not credible.[11] Denial of discharge is therefore warranted on this lone ground.[12]

It is therefore, accordingly,

ADJUDGED that the defendant's discharge in bankruptcy be, and it is hereby, denied.

---

**10.** See note 7, *supra.*

**11.** In matters where credibility is concerned, the bankruptcy court has been regarded as peculiarly within a superior position to make the determination of grant or denial of discharge. "Because the Referee is in a superior position to make the proper determination of any issue of fact, it has been held that he has broad discretion in granting or refusing discharge." *In re Brown,* 314 F.Supp. 947, 954, 955 (W.D.Ark. 1970), affirmed, 444 F.2d 49 (8th Cir.1971).

**12.** See notes 9 and 11, *supra.*