Diana TOWNSEND, Plaintiff-Appellant,

v.

James E. TOWNSEND,
Defendant-Respondent.

No. 67602.

Supreme Court of Missouri,
En Banc.

April 15, 1986.

Robert B. Satchell, Union, for plaintiff-appellant.

James C. Ochs, Clifford Schwartz and Charles M. Shaw, Clayton, for defendant-respondent.

RENDLEN, Judge.

The principal issue for resolution is whether the common law doctrine of interspousal immunity shall remain a bar against claims for personal injuries inflicted by one spouse against the other during marriage.

Appellant Diana Townsend filed action against her husband seeking damages for personal injuries suffered when he shot her in the back with a shotgun as he attempted to enter her residence. It was alleged the shooting was "intentional and malicious in that [d]efendant acted with a purpose to seriously injure or kill the [p]laintiff by

means of a deadly weapon," causing injuries which entitled her to compensatory and punitive damages.[1]

Respondent moved for summary judgment, raising as a bar the doctrine of interspousal immunity and on the issues thus framed the trial court entered the summary judgment for respondent. Appeal was taken to the Court of Appeals-Eastern District and prior to opinion, transfer was granted that we might examine the issue presented which is both of general interest and special importance. Mo.Const., art. V, § 10; Rules 83.02, 83.06.

Long established common law principles authorize courts to compel tort-feasors to compensate those they intentionally or negligently injure. *Steggall v. Morris*, 363 Mo. 1224, 258 S.W.2d 577 (Mo. banc 1953). Finding insufficient support remaining for the proposition that tort-feasors should escape liability for injuries they inflict because the victim happens to be their spouse, we today abolish the doctrine of interspousal immunity as a bar to claims for intentional torts. This step, though a departure from earlier Missouri case law, recognizes that the doctrine from its origin had been a rule in search of a rationale and that the bases advanced in prior years for its support have been substantially diluted or simply disappeared.[2]

Interspousal tort immunity flowed as a by-product from the common law concept of oneness or the "identity of spouses." "By marriage, the husband and wife are one person in law: that is, the very being or legal existence of the woman is suspended during the marriage, or at least is incorporated and consolidated into that of the husband." 1 W. Blackstone Commentaries 442. Suspension of the wife's personal and property rights meant "that she lost the capacity to contract for herself, or to sue or be sued without joining the husband as plaintiff or defendant." W. Prosser, The Law of Torts 859–860 (4th ed. 1971).[3] This concept made suits between husband and wife virtually impossible; because if either was plaintiff in suits against the other it was deemed that the husband sued himself.

Missouri, as did other states in varying degrees, modified the rule in 1855 by granting a married woman her legal identity. This was first accomplished through exception to joinder rules in our civil procedure statutes.[4] Thirty-four years later the Married Women's Act more substantively defined the scope of a married woman's legal identity. Chapter 109, RSMo 1889. Section 6864 of the act deemed a married woman a "femme sole" for the purposes of "transact[ing] business ... to contract and be contracted with, *to sue and be sued*, and to enforce and have enforced against her

1. Counsel in oral argument informed this Court, although outside the record, that the shooting occurred in the period following the trial and submission of a suit for dissolution but prior to the entry of final judgment in that separate action.

2. *See generally* Comment, Interspousal Tort Immunity in Missouri, 47 Mo.L.Rev. 519 (1982).

3. It would serve little purpose to inquire further "at this late date as to how far the historical basis of these rules is a mixture of the Bible and mediaeval metaphysics, the position of the father of the family in Roman law, the natural law concept of the family as an informal unit of government with the physically strong person at the head, or the property law of feudalism." W. Prosser, The Law of Torts 860 (4th ed. 1971).

4. Chapter 128, art. II, § 7, RSMo 1855 made two exceptions to the rule that a married woman could only be a party where joined with her husband. Where the action concerned her separate property or where the action was "between herself and her husband, she [could] sue and be sued alone." An amended version, ch. 59, § 3468, RSMo 1879, required a married woman's husband to be "joined with her in all actions *except* those in which the husband is the sole plaintiff and the wife the sole defendant, or the wife a plaintiff and the husband a defendant...."

The restrictive language in § 3468, including specific reference to a wife suing her husband, was supplanted by a more general, permissive provision allowing a married woman, "in her own name, with or without joining her husband as a party, [to] sue or be sued ... with the same force and effect as if she was a femme sole ..." Section 1735, RSMo 1909.

This statute was repealed in 1943 (Laws of Mo. p. 353) and was incorporated into the "real party in interest" statute. Section 507.010, RSMo Cum.Supp. 1984.

property such judgments as may be rendered for and against her, and may *sue and be sued at law* or in equity, *with or without* her husband being joined as a party ..." (emphasis added).[5]

The crucial question never squarely addressed by the Court was whether that language abrogated the common law unity fiction for purposes of interspousal torts. In *Rogers v. Rogers,* 265 Mo. 200, 177 S.W. 382 (1915), the act was only nominally construed in dismissing a wife's false imprisonment action against her husband. Though sometimes characterized as procedural and on other occasions as substantive, § 8304, RSMo 1909, was found to be a definitive declaration of women's rights as a "femme sole." However, the entrenched unity doctrine played a continuing role in the narrow "statutory construction" resulting in this Court's refusal to depart from the archaic doctrine absent express legislative authority.[6] "Whether the absence of this authority is due to the doctrine of the unity created by the marriage relation, or to any effort on the part of legislatures and courts to promote harmony or at least lessen the cause of controversy between the husband and wife, the nonexistence of the husband's [and thus the wife's] right in this regard uniformly prevails." 177 S.W. at 384.[7]

The narrow statutory construction of *Rogers,* flowing from the unity fiction, persists in Missouri, despite a thirty-year trend away from strict application of interspousal immunity. Following the 1915 decision in *Rogers* the bar to interspousal tort actions was classified as substantive, the Court finding that no cause of action for personal injuries between husband and wife arose at common law. *Willott v. Willott,* 333 Mo. 896, 62 S.W.2d 1084, 1085 (1933). Yet legislative inaction in the face of *Rogers,* was in the end analysis given as justification for the decision. *Id.* 62 S.W.2d at 1085–86.

However, in *Mullally v. Langenberg Bros. Grain Co.,* 339 Mo. 582, 98 S.W.2d 645 (1936), a wife was allowed to sue her husband's employer for her injuries suffered as a result of acts by the husband in the course of his employment. Quoting Judge Cardozo, the Court found the negligent or willful acts upon the person of a wife did not cease to be unlawful because the law exempted the husband from liability. *Id.* 98 S.W.2d at 646, citing *Schubert v. Schubert Wagon Co.,* 249 N.Y. 253, 164 N.E. 42, (1928). However, the *Mullally* Court reasoned that indemnification by employee to employer would be based on breach of duty to the employer and not on the tort victim's cause of action.

In *Hamilton v. Fulkerson,* 285 S.W.2d 642 (Mo.1955), the narrow statutory construction of *Rogers* was again circumvented to allow a wife to sue her husband for injuries sustained by his negligent operation of an automobile *before* their marriage. There the Court construed a Married Women's Act provision making rights of action possessed by a woman at marriage separate property as an abrogation of the unity doctrine for antenuptial torts. Section 451.250.1, RSMo 1978. "Irrespective of statutes, any common law rule based on the fiction of the identity of husband and wife, long since contrary to the fact, should not be applied to any 'first

---

5. The language of the 1889 statute has remained unchanged and is currently denominated § 451.290, RSMo 1978.

6. In *Hamilton v. Fulkerson,* 285 S.W.2d 642 (Mo. 1955), this Court concluded "that the reasons prompting [*Roger's* strict] statutory construction ... rather than the possible and plausible contrary construction, were considerations of 'public policy.'" *Id.* at 644.

7. Were we still to base our opinion on the "prevailing" view, there would be little question of the outcome. California, whose view we

adopted in *Rogers v. Rogers,* 177 S.W. at 384, citing *Peters v. Peters,* 156 Cal. 32, 103 P. 219 (1909), has since totally abrogated the doctrine both for intentional and negligent torts. *Self v. Self,* 58 Cal.2d 683, 26 Cal.Rptr. 97, 376 P.2d 65 (1962); *Klein v. Klein,* 58 Cal.2d 692, 26 Cal. Rptr. 102, 376 P.2d 70 (1962). All in all, interspousal immunity has been abolished in 30 states and has been partially abolished in 11 others. *See Renfrow v. Gojohn,* 600 S.W.2d 77, 80–81 (Mo.App.1980); Annot. 92 A.L.R. 3d 901 (Supp.1985).

impression' fact situation arising in this state." 285 S.W.2d at 645.

The unity fiction was also found inapplicable where a wife sought to sue the administrator of her deceased husband's estate for the negligent acts of her husband during their marriage. *Ennis v. Truhitte,* 306 S.W.2d 549 (Mo. banc 1957) (overruled in *Ebel v. Ferguson,* 478 S.W.2d 334, 336 (Mo. banc 1972)). With the husband dead, there was no marital relationship to disturb and thus no policy basis for applying the rule.

The trend toward liberalization came to a halt in *Brawner v. Brawner,* 327 S.W.2d 808 (Mo. banc 1959), *cert. denied,* 361 U.S. 964, 80 S.Ct. 595, 4 L.Ed.2d 546 (1960). Distinguishing earlier cases of interspousal tort recoveries as special circumstances, the Court found itself "in [no] better position to interpret the legislative intent of these statutes than the courts that decided the *Rogers* case in 1915 and the *Willott* case in 1933." *Id.* at 811. Against the confusing backdrop of the *Rogers, Hamilton, Ennis* and *Brawner* cases, this Court in its most recent decision on the issue retreated further, refusing to *"create* a cause of action" where, due to the unity fiction, "no cause of action [comes] into existence during the marriage." *Ebel v. Ferguson,* 478 S.W.2d 334, 336 (Mo. banc 1972).

Although not addressed in *Ebel,* the Court in *Novak v. Kansas City Transit, Inc.,* 365 S.W.2d 539 (Mo. banc 1963) reversed a trial court decision which had barred a wife from recovering for the loss of consortium of her husband on the theory of the common law suspension of the wife's legal existence during the marriage. Missouri's Married Women's Act (present §§ 451.250–451.300), it was argued, did not create any rights not available at common law but only removed those disabilities specified in statute, not including right to loss of consortium. In rejecting that argument, the *Novak* Court found the scope and purpose of the Married Women's Act to be comprehensive, relying on an earlier construction in *Clow v. Chapman,* 125 Mo.

101, 28 S.W. 328 (1894). The Married Women's Act statutes, as a whole, were found to have placed the wife's legal existence on an equal footing with her husband, and to ignore those rights because they were not specifically recognized in common law was considered "no more than adhering to a barren technicality." *Novak* at 541.

The statutes, when considered in their full scope and purpose, give the wife a separate legal existence, whereas before her legal existence was considered merged into that of her husband, and for this reason and for no other she could not maintain the action. New rights and new obligations necessarily arise from the changed condition, as incidents thereto. When she is given the sole control of her personal property, and the right to recover the same by her own suit, it might follow as an incident, that she has the right to make contracts in respect of such property, though the statute may not, in terms, give her the right to make contracts in relation thereto.

*Novak* at 541, quoting *Clow,* 28 S.W. at 330.

█ Today we reject the archaic doctrine embraced in *Ebel* and *Rogers.* Those decisions as well as related cases employing the doctrine of interspousal immunity in intentional tort actions are disapproved and are no longer to be followed. It "belies reality and fact to say there is no tort when the husband either intentionally or negligently injures his wife" or vice versa. *Brawner,* 327 S.W.2d at 819–20 (Hollingsworth, J., dissenting).

█ For the reasons discussed we conclude that the plaintiff-appellant should not be limited in recovery to the damage to her clothing (personal property) caused by the shotgun blast, but may also be compensated for the damage to her person. It does not suffice to refuse this remedy because the cause of action fails to fit a precise formula of common law. *See Steggall,* 258 S.W.2d at 579. Missouri "did not adopt the English common law as a substantive statute but rather as decisional law" of which

this Court is custodian, with authority to alter or abrogate a common law doctrine absent contrary statutory direction by our legislature. *Jones v. State Highway Commission,* 557 S.W.2d 225, 228 (Mo. banc 1977). We find no such contrary direction and indeed are guided in our statutory construction by § 1.010, RSMo 1978:

no ... law of this state shall be ... limited in its scope or effect by the courts of this state, for the reason that it is in derogation of, or in conflict with, the common law ... but all acts of the general assembly, or laws, shall be liberally construed, so as to effectuate the true intent and meaning thereof.

Turning to the specific statute at issue, the expansive language is plain, deeming a married woman a "femme sole" so that, among other things, she "may sue and be sued" at law or in equity. Section 451.290, RSMo 1978. "The broad and all inclusive language of the statute is not limited in any respect, and does not directly or by inference provide that she may be sued by everyone except her husband." 327 S.W.2d at 821 (Hollingsworth, J., dissenting); *see also Brown v. Gosser,* 262 S.W.2d 480, 483–84 (Ky.Ct.App.1953) (construing similar language). With due consideration of those cases which have previously spoken to this issue, we believe their statutory analysis was limited less by the legislature than by the initially flawed construction in *Rogers* and the narrow view stemming from so-called "public policy" considerations inherent in the unity fiction.

■ Turning to the unity fiction itself, our construction today does not *create* a right but rather constitutes an overdue *recognition* that our General Assembly attempted to abrogate this common law doctrine in the Married Women's Act. The derivative sections of the act by their terms authorize married women to transact business, convey property, contract, sue and be sued in the same manner as a single woman. Sections 451.250, 451.290, RSMo 1978; 507.010, RSMo Cum.Supp.1984. A husband is relieved of liability for his wife's torts. Section 537.040, RSMo 1978.

Spouses may contract between themselves and each sue the other for contractual breach. They may own property separately, convey property to the other and sue the other to protect those rights. Section 442.025, RSMo 1978. This panoply of rights has been confirmed in a variety of cases, including suits sounding in tort. *See Brawner,* 327 S.W.2d at 817 (cases cited); *Nebbitt v. Nebbitt,* 589 S.W.2d 297 (Mo. banc 1979) (interspousal tort immunity inapplicable where tort was conversion of spouse's separate property). The unity concept has also been diluted by the fact that spouses can sue for dissolution of marriage merely on grounds of irretrievable breakdown, § 452.305.1(2), RSMo 1978, and by limits placed on privileged communications between spouses. *State v. Heistand,* 708 S.W.2d 125 (Mo. banc 1986).

As to public policy, it is little comfort to the victim of an intentional shooting at the hands of her husband that her recovery is barred by a common law doctrine having as its basis "her protection and benefit: so great a favorite is the female sex in the laws of England." 1 W. Blackstone, Commentaries 445. By the same token, we no longer indulge the notion that this doctrine is needed to preserve the sanctity of the home. In cases such as this, there can be little sanctity remaining when the relationship becomes the source of wanton violence. Nor can we foresee that personal injury suits between spouses will be any more damaging to marital harmony than the multiplicity of property and contract actions currently permitted. Indeed, to frustrate recovery where warranted arguably contributes to violent domestic disturbances.

■ Accordingly, because the rationale for the holding of the *Rogers* and similar cases can no longer be justified, we hold that a spouse may maintain an action against the other for an intentional tort. Our holding today shall be applicable to all actions in which a final order, decree or judgment has not been entered as of the date of issuance of this opinion.

The judgment is reversed and the cause remanded to the trial court with direction to reinstate plaintiff's petition.

HIGGINS, C.J., and BILLINGS and WELLIVER, JJ., concur.

ROBERTSON, J., concurs in result.

BLACKMAR, J., concurs in separate opinion filed.

DONNELLY, J., dissents in separate opinion filed.

BLACKMAR, Judge, concurring.

I concur and write only to express astonishment that a judge who concurred in *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983), would presume to deliver a lecture about waiting for the legislature.

Based on the assurances in *S.A.V. v. K.G.V.,* 708 S.W.2d 651 (Mo. banc 1986) that the principal opinion does not foreclose further consideration of "unwanted kiss" and "rolling pin" cases, I join in the principal opinion.

DONNELLY, Judge, dissenting.

In *Ebel v. Ferguson,* 478 S.W.2d 334, 336 (Mo. banc 1972), the following statement was made: "V.A.M.S. 1.010, by adopting the common law, implants in Missouri the common law concept that a wrongful act between spouses does not give rise to a cause of action."

I have come to believe that such statement is erroneous because it cannot be said with certainty that interspousal immunity was a part of the common law prior to the year 1607. *See Osborne v. Purdome,* 244 S.W.2d 1005, 1011 (Mo. banc 1951).

Therefore, I do not argue that this Court is without power to abrogate interspousal immunity in Missouri. I do argue that the power should be exercised with some evidence of restraint. I merely submit that the question of abolishing interspousal immunity should be decided by the people or by their elected representatives and not by this Court.

I respectfully dissent.