### In re Harold Keith TOWNSEND, Debtor.

**Bankruptcy No. 86–02949–2.**

United States Bankruptcy Court,
W.D. Missouri.

May 5, 1987.

---

**4.** Plaintiff's Amended Complaint filed July 1, 1986.

**5.** See Chapter 75, N.C.General Statutes.

Ralph E. Pratt, Independence, Mo., for debtor.

Gene A. DeLeve, Kansas City, Mo., trustee.

## MEMORANDUM OPINION AND ORDER

FRANK W. KOGER, Bankruptcy Judge.

A Chapter 7 debtor claims that his interest in two parcels of real estate, neither of which are his homestead, is exempt under V.A.M.S. Section 442.030 and 11 U.S.C. Section 522(b)(2)(B) as property held in tenancy by the entirety with his spouse who did not join in his petition for relief. The Trustee has objected and requested an evidentiary hearing with respect to the existence of debts undertaken jointly by debtor and his non-bankrupt spouse, and with respect to the relative interests of debtor and spouse in the tenancy by the entirety property.

The facts are extremely simple. Debtor filed his petition for relief under Chapter 7. He and his wife own an interest in their residence in which they live, and an interest in the house they previously lived in and which they sold on an "owner-finance" arrangement when they bought the present residence. They also own an interest in a house previously owned by a relative which was also sold on an "owner finance" arrangement. Initially debtor claimed all three interests as homestead and this Court ruled that only the debtor and spouse occupied realty could be qualified as a homestead and thus exempted. The Court allowed debtor to amend his schedules and debtor claimed the other two interests as exempt under the doctrine of "tenancy by the entirety".

The question to be determined in this case is whether entireties property may be exempted under the Bankruptcy Code by an individual debtor who owes debts jointly with a non-bankrupt spouse. This Court holds that such property is not exempt to the extent of the joint obligations.

## TENANCY BY THE ENTIRETY IN MISSOURI

Estates by the entirety are peculiar creatures of the common law. They are built upon a fiction of the law that husband and wife are one and only one legal entity. *United States v. Hutcherson,* 188 F.2d 326, 329–30 (8th Cir.1951) (citing cases). In addition to Missouri, twenty-four states and the District of Columbia affirmatively recognize tenancy by the entirety and only thirteen have abolished it. 4A Powell on Real Property, Paragraph 620[4], 52–13. This means that tenancy by the entirety is valid in no less than twenty-six and possibly as many as thirty-eight jurisdiction. *Id.* However, the Bankruptcy Code significantly affects only the seventeen jurisdictions in which the debtor's interest in entirety property is exempt from process. Ackerly, *Tenants by the Entirety Property and the Bankruptcy Reform Act,* 21 Wm. & Mary L.Rev. 701, 703 (1980) [hereinafter "Ackerly"].

In Missouri, each tenant by the entirety is entitled to possess the whole of the entirety property. One spouse's interest as a tenant by the entirety may be transferred to the other by inter vivos release, but not by testamentary devise. *McElroy v. Lynch,* 232 S.W.2d 507 (Mo.1950). Both spouses acting in concert can convey or encumber their tenancy by the entirety property but neither, acting alone, can do

so. *Otto F. Stifel's Union Brewing Co. v. Saxy*, 201 S.W. 67, 71 (Mo.1918). Upon the death of one tenant the entire estate belongs to the other, not by virtue of survivorship, but by virtue of the title that vested under the original limitation. *Crosby v. United States*, 298 F.Supp. 172, 173 (E.D. Mo.1969). "In the estate of the entirety the husband and the wife during their joint lives each owns, not a part, or a separate or separable interest, but the whole, and therefore the death of one leaves the other still holding the title as before, with no one to share it." *Wilson v. Frost*, 186 Mo. 311, 319, 85 S.W. 375, 377 (1905) *quoted in Hutcherson*, 188 F.2d at 329.

Under Missouri law, one spouse's creditors cannot reach interests in entireties property but joint creditors, however, can reach Missouri entireties interests.

> In Missouri, entirety property cannot be reached to satisfy the individual debts of one of the spouses making up the entirety entity ... Missouri entirety property can be reached to satisfy joint debts of the spouses, however, even when only one of the entirety-entity spouses is in bankruptcy and the other not.

*In re Magee* (Bankr.W.D.Mo. Aug. 29, 1975) (aff'd and published as appendix to *In re Magee*, 415 F.Supp. 521, 527) (W.D. Mo.1976) (emphasis in original); *See also State ex rel State Highway Commission v. Morganstein*, 649 S.W.2d 485, 489 (Mo.Ct. App.1983).

In this district, the bankruptcy court has been careful to follow the state law on the subject of tenancies by the entirety. Thus, in the court's prior decision on the issue, *Matter of Anderson*, 12 B.R. 483, 488 (Bkrtcy.W.D.Mo.1981), the opinion contained as its focal point the undeniable fundamental rubric to be applied in determining whether property should come into the bankruptcy estate—that the issue is dependent upon state law. "Section 541 of the Bankruptcy Code ... 'is not intended to expand the debtor's rights against others more than they exist at the commencement of the case' ... '(I)n the absence of a federal law of property, the existence and nature of the debtor's interest in tenants by entireties property are determined by nonbankruptcy law.'" *Matter of*

*Anderson, supra,* at 488, 489. In *Anderson*, accordingly, the court pointed out that the Missouri law of tenancy by the entirety was more rigid and enveloping than that of the other states in which bankruptcy courts had held a debtor's interest in entirety property to be a part of the bankruptcy estate. Whereas, in those other states, the state law had recognized a right of survivorship for one spouse, the Missouri version of tenancy by the entirety did not recognize any such right of survivorship. "Although the surviving spouse in an estate by the entirety becomes the sole owner of the property on the death of the other spouse, he or she does not do so by survivorship as would be the case in a joint tenancy. 'In an estate of the entirety the husband and the wife during their joint lives each owns, not a part, or a separate or a separable interest but the whole, and therefore, the death of one leaves the other still holding the whole title as before with no one to share it.'" *Nelson v. Hotchkiss*, 601 S.W.2d 14, 20 (Mo. en banc 1980). Thus, there was no facet of the Missouri entirety law which could be utilized as a basis for concluding that the debtor had some identifiable right to the property, exclusive of the right of his or her spouse. The rule enunciated by this court in the *Anderson* decision was, therefore, necessarily that "the debtor, without his spouse, has no legal or equitable interest in entirety property in Missouri as of the date of the commencement of a case under Title 11 of the Bankruptcy Code." 12 B.R. at 489. In so ruling, the court observed some of the inequitable consequences which might result from such a ruling, 12 B.R. at 490, but observed that, when the law is clear, "the result which is here reached is exactingly compelled." 12 B.R. at 491.

The question which now presents itself to the court is whether, in *Townsend v. Townsend, infra,* the Supreme Court of Missouri loosened the concept of tenancy by the entirety sufficiently to warrant a finding that a bankruptcy debtor has some interest, exclusive of his or her spouse's interest, in entirety property as of the date of bankruptcy. Unless state law somehow can be held to have retreated on this issue,

the bankruptcy court may not go on to consider the appropriate manner in which the debtor's interest may be brought into the estate and the steps which must be taken in order to protect the interest of the other spouse. In the *Townsend* case, the Supreme Court of Missouri, sitting en banc, did away with the doctrine of unity of husband and wife insofar as that doctrine would prevent a wife from suing her husband in tort for an allegedly intentional gunshot wound. In so doing, it did not purport to detract from any element of tenancy by the entirety under the law of Missouri. What is stated in the paragraphs which follow is stated by way of prognostication of what the law of Missouri may be in this respect in the future, based upon the dictum contained in the *Townsend* case.

The Missouri Supreme Court in *Townsend v. Townsend,* 708 S.W.2d 646 (Mo. banc 1986), recently announced that the common law doctrine of interspousal immunity can no longer bar claims for personal injuries inflicted by one spouse against the other. Like estates by the entireties, Missouri's "[i]nterspousal tort immunity flowed as a by-product from the common law concept of oneness of 'identity of spouses'." 708 S.W.2d at 647. The Missouri Supreme Court explained in *Townsend* that its decision to reject the "entrenched" and "archaic" "unity fiction", and adopt the "prevailing view" of the majority of jurisdictions regarding interspousal torts did not create a new right, but was instead "overdue recognition that our General Assembly attempted to abrogate this common law doctrine in the Married Women's Act". 708 S.W.2d at 650. "The derivative sections of the act by their terms authorize married women to transact business, convey property, contract, sue and be sued in the same manner as a single woman." *Id.*

The *Townsend* opinion noted that its treatment of tort immunity is consistent with a general erosion of the common law fiction of the identity of spouses. "The unity concept has also been diluted by the fact that spouses can sue for dissolution of marriage merely on the grounds of irretrievable breakdown, and by limits placed on privileged communications between spouses," and by abandonment of the position that a wife could not recover "for the loss of consortium of her husband on the theory of the common law suspension of the wife's legal existence during the marriage." 708 S.W.2d 649–50 (citations omitted).

Whereas Missouri has demonstrated its willingness to abandon the aged and outmoded fiction that husband and wife are, under all circumstances, one person in the law, this Court will not presume to trap the joint creditors of such a union in an ancient time warp for bankruptcy purposes in entirety estates.

## ENTIRETIES IN BANKRUPTCY

Under the Bankruptcy Act of 1898 [hereinafter "Act"] and the prior Bankruptcy Act of 1867, property held in tenancy by the entirety did not become part of the bankruptcy estate when only one of the spouses was in bankruptcy. This is because the bankruptcy court neither administered nor distributed exempt property. Such property was simply excluded from the bankruptcy estate. *Lockwood v. Exchange Bank,* 190 U.S. 294, 23 S.Ct. 751, 47 L.Ed. 1061 (1903). Section 70(a)(5) of the Act gave the trustee title to "property, including rights of action, which prior to the filing of the petition [debtor] could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered". The interest in entirety property of a Missouri debtor who filed individually without his spouse was held not to come into the estate under the Act because he could not transfer it and his creditors could not levy upon it and sell it by judicial process. *In re Wetteroff,* 453 F.2d 544, 546 (8th Cir. 1972).

However, the Bankruptcy Reform Act of 1978 [hereinafter "Code"] differs from the old Act in that it includes in the bankruptcy estate much of the property that had previously been exempt. Because debtor's undivided interest in the whole of the entirety property becomes part of the estate under

the Code, this non-exempt entirety property itself now becomes subject to estate administration. Congress explicitly rejected the Act's transferability/leviability test:

> The bill determines what is property of the estate by a simple reference to what interests in property the debtor has at the commencement of the case. This includes all interests, such as interests in real or personal property, tangible and intangible property, choses in action, causes of action, patents, and processes, contingent interests and future interests, *whether or not transferable by the debtor* ...
>
> These changes will bring anything of value that the debtors have into the estate. The exemption section will permit an individual debtor to take out of the estate that property that is necessary for a fresh start and for the support of himself and his dependents.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 175–76 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5963, 6137–38 (footnotes omitted and emphasis added).

Three sections of the current Bankruptcy Code are relevant to entirety questions: Section 541 establishes the interest of the trustee in entirety property; Section 522 allows debtors to exempt as much entirety property as cannot be reached under state law; and Section 363 sets out the manner in which the trustee is to conduct his sale of non-exempt entirety property. The legislative history explains the interrelationship among the three sections and the changes from prior law:

> The bill also changes the rules with respect to marital interests in the property. Interests in the nature of dower and curtsey will not prevent the property involved from becoming property of the estate, nor will it prevent sale of the property by the trustee. With respect to other co-ownership interest[s], such as tenancy by the entirety, joint tenancies, and tenancies in common, the bill does not invalidate the rights, but provides a method by which the estate may realize on the value of the debtor's interest in the property while protecting the other rights.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 177 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6137 (footnotes omitted).

## SECTION 541

Except for a few explicit exceptions, Section 541(a)(1) provides that the debtor's estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." The intent of Congress to make Section 541 all-inclusive is clear from its legislative history:

> Paragraph (1) has the effect of overruling *Lockwood v. Exchange Bank,* 190 U.S. 294 [23 S.Ct. 751, 47 L.Ed. 1061] (1903) because it includes as property of the estate all property of the debtor, even that needed for a fresh start. After the property comes into the estate, then the debtor is permitted to exempt it under proposed 11 U.S.C. Section 522, and the court will have jurisdiction to determine what property may be exempted and what remains as property of the estate.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 368 (1977) *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6324; S.Rep. No. 989, 95th Cong., 2d Sess. 82 (1978), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5787, 5868. *See also, e.g., Sumy v. Schlossberg,* 777 F.2d 921, 928 n. 13 (4th Cir.1985); *Matter of Grosslight,* 757 F.2d 773 at 775; *Chippenham Hosp., Inc. v. Bondurant,* 716 F.2d 1057, 1058 (4th Cir.1983); *Napotnik v. Equibank and Parkvale Savings Association,* 679 F.2d 316, 318 (3d Cir. 1982); *In re D'Avignon,* 34 B.R. 796, 800 (Bankr.D.Vt.1982); *aff'd D'Avignon v. Palmisano,* 34 B.R. 796 (D.Vt.1982); *In re Trickett,* 14 B.R. 85, 88–89 (Bankr.W.D. Mich.1981).

*Napotnik, supra,* cites the exemption provided under Section 522 as further support for including entireties property in the estate: "[I]t is at least clear that by allowing an individual debtor to exempt certain interests as a tenant by the entirety, Congress intended that such interests be included in the estate in the first place". 679 F.2d at 318 (citing cases.) In a similar vein, Ackerly, *supra,* points out that the Section 363 right of the trustee to sell

entirety property could not exist unless Congress intended debtor's interest in entirety property to be included in the estate. *Accord, Napotnik, id.*, n. 4.

## SECTION 522

Once it comes into the estate, debtor may elect to exempt his interest in entirety property under 11 U.S.C. Section 522(b)(2)(B):

> Notwithstanding section 541 of this title, an individual may exempt from this property of the estate ... any interest in property in which the debtor had, immediately before the commencement of the case, an interest as a tenant by the entirety or joint tenant to the extent that such interest as a tenant by the entirety or joint tenant is exempt from process under applicable nonbankruptcy law.

Since property law in general and the law of co-tenancies in particular are creatures of state law, the "applicable nonbankruptcy law" for the purposes of this case is the applicable Missouri law of tenancy by the entirety.

The effect of Sections 541 and 522 is to make entirety property non-exempt in the bankruptcy of one of the tenants to the extent joint creditors could have seized the entireties estate under state law—that is, to the extent that debtor and his spouse are joint obligors. This is because Congress limited the size of debtor's exemption under Section 522 to the common law immunity enjoyed by entirety property in debtor's individual state. While entirety property has traditionally been free from the claims of creditors of only one of the tenants, it is never immune (not even in Missouri) from the claims of joint creditors. *E.g., Dickey v. Thompson*, 323 Mo. 107, 18 S.W.2d 388, 393 (1929). In this respect at least, such property would not be exempt from process in Missouri. See Kalevitch, *Some Thoughts on Entireties in Bankruptcy*, 60 American Bankruptcy Law Journal 141, 159 (1986) [hereinafter "Kalevitch"].

The *Grosslight* decision points out that the circuits had at one time been split on the question whether entireties property is exempt from joint creditors under Section 522(b)(2)(B), 757 F.2d at 776. The Third Circuit held in *Napotnik* that a joint creditor may levy on the property itself and thus on the interests of both spouses, 679 F.2d at 322–29, while the Fourth Circuit had reasoned in *Greenblatt v. Ford*, 638 F.2d 14 (4th Cir.1981), *aff'g In re Ford*, 3 B.R. 559 (Bankr.D.Md.1980), that a joint creditor could not levy on a debtor's interest in entireties property, but only on the property itself. 638 F.2d 14. However, to prevent injustice the Fourth Circuit had continued its pre-Code practice of lifting the automatic stay while joint creditors seek their remedy in state court. *Chippenham Hospital*, 716 F.2d at 1059. *Accord, In re Anderson*, 12 B.R. 483 (Bankr.W.D.Mo.1980) This Court agrees with the conclusion reached in *Grosslight:*

> The distinction between the two views is of theoretical and procedural rather than substantive significance ... [B]ecause each spouse owns the whole estate and each spouse is liable for the whole debt, it is a false distinction to declare that a joint creditor cannot reach a spouse's individual undivided interest in entireties property. A joint creditor would inevitably seek the joint interest to satisfy a joint and several liability and under state law he could do so. See *Napotnik*, 679 F.2d at 321 & n. 10.
>
> From a procedural standpoint, too, we think *Napotnik* takes the better view. The Fourth Circuit's practice requires the creditor to take separate actions to lift the automatic stay and defer discharge and to proceed against the debtor in state court. See *Sovran Bank [v. Anderson]*, 743 F.2d [223] at 224. The procedure we now approve [filing a proof of claim and an objection to the claim of exemptions] allows the creditor to protect his rights with a single filing in bankruptcy court. There is no question that the statute in effect at the time this case was filed, Bankruptcy Act of 1978, ... gave the bankruptcy court jurisdiction over such claims by creditors. 757 F.2d at 776–70.

The Circuits are no longer split on this issue, however, as the Fourth Circuit has since changed its position, citing *Grosslight* with approval in *Sumy v. Schlossberg*, 777 F.2d 921, 928 n. 13 (4th Cir.1985). *Sumy*

expressly rejected the dicta concerning treatment of joint creditors in *Ford*, 3 B.R. at 575–76, "thereby reaffirming the guiding principle of all of our relevant cases that joint creditors are entitled and should in some manner be allowed, to reach entireties property to satisfy their claims." *Sumy*, 777 F.2d at 926–27.

■ Because the interests of both debtor and spouse are available in Missouri to the creditors of both, *Magee, (supra )*, at 527, debtor's interest is not "exempt from process" under the law of Missouri to the extent of the joint obligations of debtor and his spouse. *Accord, e.g., Sumy*, 777 F.2d at 928, *Grosslight*, 757 F.2d at 776, *Napotnik*, 679 F.2d at 320–21; *In re Roy*, 42 B.R. 102, 105 (Bankr.S.D.Fla.1984); *In re Sefren*, 41 B.R. 747, 748 (Bankr.D.Md.1984); *In re Trickett*, 14 B.R. at 90. The balance of debtor's entirety property that exceeds the *amount of joint claims* that can be reduced to judgment and levied upon may be exempted under Section 522 because it is effectively immune from process under Missouri law.

■ Debtor has argued that this Court should uphold the policy of protecting the property interests of a nonconsenting spouse from the actions of the other spouse. But this Court finds that a spouse who has knowingly undertaken a joint obligation can hardly be said to be "nonconsenting". (See discussion supra at page 962 on the impact of the Missouri Married Women's Act on the power of spouses to transact business by contract.) Consequently, this Court perceives no policy conflict with its finding that entireties property is reachable to the extent of the unsecured joint obligations of debtor and spouse.

■ Debtor also suggests that joint creditors with pre-bankruptcy judgments have greater rights to entireties property than other unsecured joint creditors. This argument has been soundly rejected in previous decisions interpreting Section 522:

> [T]he absence of a judgment or lien has no bearing on the hypothetical issue of whether the debtor's interest would be exempt from process under state law, so the property cannot be exempted and

remains part of the estate to the extent of joint claims regardless of the joint creditor's actual possession of a judgment or lien under state law.

*Grosslight*, 777 F.2d at 928 n. 14. *Accord, Chippenham*, 716 F.2d at 1058; *Sefren*, 41 B.R. at 748, *quoting In re Seidel*, 38 B.R. 264 (Bankr.D.Md.1984).

## SECTION 363

■ Another argument frequently raised in cases of this type echoes the now-abandoned transferability test of the prior Act. Debtor states that if he cannot, under state law, transfer his entireties interest to another, voluntarily or involuntarily, and if the trustee in bankruptcy cannot have better rights than the debtor, then the trustee may not sell the debtor's interest. Congress, however, has superseded the otherwise indestructible state law rights of the debtor and spouse by the enactment of 11 U.S.C. Section 363(h). Under the Code the bankruptcy trustee has the authority to transfer both the bankrupt and the non-bankrupt tenants' shares of the estate, so long as the criteria for use of Section 363(h) are met. *See generally* Kalevitch, *supra*, at 143 n. 13.

For debtor's interest in entireties property that is not specifically exempted from the bankruptcy estate, the trustee has the general power, "after notice and a hearing, [to] use, sell, or lease, other than in the oridinary course of business". 11 U.S.C. Section 363(b)(1). Section 363(h) outlines the circumstances under which the trustee may sell the co-owner's interst in a tenancy in common along with the estate's interest:

> (1) partition in kind of such property among the estate and such co-owners is impracticable;
>
> (2) sale of the estate's undivided interest in such property would realize significantly less for the estate than sale of such property free of the interests of such co-owners;
>
> (3) the benefit to the estate of a sale of such property free of the interests of co-owners outweighs the detriment, if any, to such co-owners; and

(4) such property is not used in the production, transmission, or distribution, for sale, of electric energy or of natural or synthetic gas for heat, light, or power. Section 363(i) grants the nonbankrupt spouse the right of first refusal and if the spouse does not exercise that option, section 363(j) requires the trustee to distribute the proceeds of sale in proportion to the respective interests of the estate and the spouse. *See Sumy*, 777 F.2d at 924 n. 5 for a list of cases applying Section 363 to entireties property.

The due process issues raised by debtor were addressed by Congress when the Code was drafted. In order to protect the due process rights of the non-bankrupt tenant, Congress requires the trustee to satisfy the test of Section 363(h) governing sale of entirety property.

> The trustee is permitted to realize on the value of the property by being permitted to sell it without obtaining the consent or waiver of rights by the spouse of the debtor or the co-owner, as may be required for a complete sale under applicable state law. The other interest is protected under H.R. 8200 by giving the spouse a right of first refusal at a sale of the property, and by requiring the trustee to pay over to the spouse the value of the spouse's interest in the property if the trustee sells the property to someone other than the spouse.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 177 (1977), *reprinted in* 1978 U.S.Code Cong. & Ad.News 5963, 6137 (footnotes omitted).

Individual creditors share in the proceeds of such a sale on a pro-rata basis. This orderly administration of debtor's property under the Code replaces the race by creditors under the Act for judgments and liens and thus better serves the longterm goal of bankruptcy law, now codified at 11 U.S.C. Section 726(b), that all creditors of each class be treated equally. 11 U.S.C. Section 726(b).

No court has ever determined that Section 363(h) is unconstitutional, and it is not necessary for this Court to address Section 363(h) sale procedure at this time. In order to determine how much, if any, of debtor's property might be subject to a Section 363 sale in this case Trustee has requested an evidentiary hearing with respect to the existence of joint debts and the relative interests of debtor and his spouse in property held as tenants by the entirety.

## ALTERNATIVES

A review of the inequitable consequences of exempting entireties property from the claims of joint creditors and the opportunity such an exemption creates for legal fraud only reinforces this Court's conclusions.

Courts have long been aware of the injustice of permitting a married debtor to obtain a discharge from joint debts while protecting a large portion of the marital assets from the reach of joint creditors. *E.g., Reid v. Richardson*, 304 F.2d 351 (4th Cir.1962); *Phillips v. Krakower*, 46 F.2d 764 (4th Cir.1931); *In re McGee*, 415 F.Supp. 521 (W.D.Mo.1976); *Shipman v. Fitzpatrick*, 350 Mo. 118, 164 S.W.2d 912 (1942). Absent some corrective action, the usual scenario proceeds as follows:

(1) Debtor spouse files an individual petition in bankruptcy excluding or exempting his entirety property.

(2) The individual and joint liability of the bankrupt spouse is discharged, leaving the other spouse individually liable on the joint obligations.

(3) Nonbankrupt spouse has insufficient non-entireties property to satisfy creditor holding pre-bankruptcy joint obligation.

(4) Unsatisfied creditor seeks to become joint judgment creditor so as to reach entireties property.

(5) Discharged debtor cannot be joined with his spouse in any proceeding on pre-bankruptcy debt.

(6) The pre-bankruptcy joint creditor can never become a joint judgment creditor after bankruptcy and the entirety property is forever beyond its reach.

This situation comes about because the basic debtor protections on discharge include elimination of personal liability and an injunction against attempts to collect past debts from the debtor. 11 U.S.C. Section 524(a). While such protections were

sidestepped under the Bankruptcy Act by withholding discharge until the joint creditor obtained satisfaction in state court, this procedure is now questionable. *See Sumy,* 777 F.2d at 930. If debtor's interest in entireties property has been exempted under Section 522(b)(2)(B), then most pre-petition judicial liens on that property would impair that exemption and are thus avoidable under Section 522(f)(1). The debtor may also be able to use Section 522(f)(1) to avoid post-petition liens. *Id.,* n. 22. Furthermore, Section 522(c) states that property exempted under Section 522 shall not be liable during or after a bankruptcy case for any pre-petition debt.

The lift-of-stay method also does violence to the longstanding principle of equal treatment for similarly situated creditors. (Id.), 777 F.2d at 932. Joint creditors who rush to have the stay lifted and race into state court obtain an unfair advantage. Additionally, each joint creditor would incur duplicative expenses in its separate motions and state court actions. The prospect of such expense could discourage joint creditors with smaller claims. See discussion in *In re Anderson,* 12 B.R. 483, 490–91 (Bankr.W.D.Mo.1981).

Further, the delay injected into the bankruptcy case by the lift-of-stay procedure works to the detriment of both the debtor, who is awaiting a fresh start, and the other creditors of the estate, who await distribution of the assets. *Sumy, Id.,* at 932. While courts may still wish in some cases to lift the automatic stay to allow a creditor to proceed against entireties property in state court, most often the parties and judicial economy would be better served by a single proceeding in bankruptcy court. *Grosslight,* 757 F.2d at 777.

The Trustee's request for an evidentiary hearing is GRANTED and will be set upon request after any necessary discovery has been completed.

This Opinion shall constitute Findings of Fact and Conclusions of Law in accordance with Rule 7052, Rules of Bankruptcy.