SECURITY PACIFIC BANK WASHINGTON, Plaintiff– Appellant,

v.

Jing Long CHANG, aka Alan J.L. Chang, et al., Defendants–Appellees.

No. 93–17384.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 2, 1995.

Decided April 11, 1996.

Robert J. Smolenski, Smolenski & Wooddell, Honolulu, Hawaii, for the plaintiff-appellant.

Enver W. Painter, Jr., Honolulu, Hawaii, for the defendants-appellees.

Before: HUG, Chief Judge; THOMPSON and O'SCANNLAIN, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide whether, under Hawaii law, a creditor is barred from reaching property held in a revocable living trust with a spendthrift clause when the property had formerly been held in tenancy by the entirety between the debtor and his wife.

I

Appellant Security Pacific Bank Washington (the "Bank") appeals the district court's grant of summary judgment in favor of Appellees Jing Long Chang (aka Alan Chang) and Chu Whea Wu Chang (aka Julia Chang) in the Bank's diversity action seeking to satisfy a judgment against Alan Chang by reaching real property held in a spendthrift trust. Prior to conveying the real property to the Alan Chang Trust, the Changs held the property in tenancy by the entirety.

On March 27, 1990, Alan Chang and his wife, Julia Chang, established two revocable living trusts: the Alan Chang Trust with Alan Chang as trustee and beneficiary, and the Julia Chang Trust with Julia Chang as trustee and beneficiary. Each trust contains the following spendthrift provision: *"Alienation of Trust.* No part of the principal or income of this trust shall be subject to anticipation, alienation, disposition, or assignment by any beneficiary or be subject to the claims of their creditors."

In each trust, the trust property at creation consisted of $10 "and such other property that Settlor may from time to time transfer to the Trustee." The first page of the Alan Chang Trust Agreement lists Alan Chang as the settlor, and the first page of the Julia Chang Trust Agreement lists Julia Chang as the settlor.

On the same day that the Changs established the two trusts, the Changs jointly conveyed to the trusts three pieces of real property which the Changs held as tenants in the entirety. For each parcel, the Changs conveyed by warranty deed an undivided, one-half interest in the respective parcel to the Alan Chang Trust, and an undivided, one-half interest in the respective parcel to the Julia Chang Trust. Although one of these properties has since been sold, the remaining two properties, located in Honolulu, are still held by the trusts as tenants in common.

In June 1990, Alan Chang signed documents that made him a guarantor to the Bank of the obligations of Qantek Information Corporation ("Qantek") in the amount of approximately $2,000,000. When Alan Chang defaulted on this obligation, the Bank filed a suit for breach of contract and fraudulent conveyance in the district court on September 16, 1991, asserting diversity jurisdiction. On April 13, 1992, the Bank moved for summary judgment on its breach-of-contract claim.

On April 20, 1993, the district court entered the order granting in part the Bank's motion for summary judgment. The district court found that Alan Chang is indebted to the Bank pursuant to his guarantee and that, in satisfaction of its judgment against Alan Chang, the Bank may execute against any assets held in trust by Alan Chang with the exception of the real property held by the Alan Chang Trust. The court reserved rul-

ing on whether the Bank may reach the real property in the Alan Chang Trust.

On April 19, 1993, the district court held a hearing on two additional, opposing motions for summary judgment brought by the Bank and the Changs. On April 22, 1993, the district court granted the Changs' motion for summary judgment and denied the Bank's motion for summary judgment. The district court refused to allow the Bank to satisfy Alan Chang's debt by reaching the real property held in trust by Alan Chang, as trustee.

The district court certified its grant of summary judgment for the Changs as a final judgment on November 17, 1993. The Bank filed a timely notice of appeal on December 16, 1993.

Pursuant to a Stipulation and Order entered July 26, 1993, the district court held Alan Chang to be indebted to the Bank in the amount of $2,033,147.81 plus, potentially, additional attorneys' fees and costs.

## II

■■■ Hawaii has long recognized the validity of spendthrift trusts. *Welsh v. Campbell,* 41 Haw. 106 (1955).

> A spendthrift trust is defined as one created to provide a fund for a beneficiary and at the same time secure it against his improvidence or incapacity. It is an active trust with provisions against alienation of the fund or property by the voluntary act of the beneficiary or through legal process by creditors.

*Id.* at 107. However, Hawaii also follows the majority rule that a spendthrift trust established by the settlor for his own benefit is invalid against the settlor's creditors. *Cooke Trust Co. v. Lord,* 41 Haw. 198, 202–05 (1955); *see* Restatement (Second) of Trusts § 156(1) (1959) ("Where a person creates for his own benefit a trust with a provision restraining the voluntary or involuntary transfer of his interest, his transferee or creditors can reach his interest."); George T. Bogert, Trusts § 40, at 155 (6th ed. 1987).

■■■ Here, the applicability of the prohibition against self-settled spendthrift trusts depends upon whether Alan Chang was the settlor of the Alan Chang Trust. *Security*

*Pacific Bank Wash. v. Chang,* 818 F.Supp. 1343, 1345 (D.Haw.1993). The Bank argues that Alan Chang's role in conveying the real property to the trusts and the actual language of the Alan Chang Trust confirm that Alan Chang was the settlor. The Changs contend that Alan Chang could not have been the settlor because the properties were not his to dispose of, but were instead placed in the Alan Chang Trust by the joint conveyance of Alan and Julia Chang as tenants by the entirety.

■■■ Hawaii recognizes the validity of tenancies by the entirety and affords such tenancies the protections that have come to serve as their hallmarks. "A tenancy by the entirety is a unique form of ownership in which both spouses are jointly seized of property such that neither spouse can convey an interest alone nor can one spouse's creditor attach the property to satisfy a debt." *Traders Travel Int'l v. Howser,* 69 Haw. 609, 613, 753 P.2d 244, 246 (1988); *see also* Haw.Rev. Stat. § 509–2 (1993). "The indivisibility of the estate, except by joint action of the spouses, is an indispensable feature of the tenancy by the entirety." *Sawada v. Endo,* 57 Haw. 608, 614, 561 P.2d 1291, 1296 (1977); *see also In the Matter of the Estate of David Au,* 59 Haw. 474, 480 n. 10, 583 P.2d 966, 970 n. 10 (1978).

In its judgment, the district court not only acknowledged that "a spendthrift trust established by the settlor for his own benefit is invalid against the settlor's creditors," *Security Pacific Bank,* 818 F.Supp. at 1345, but also specifically noted that this principle was "the basis for the court's [earlier ruling] that the other assets of the [Alan Chang Trust] could be reached by the Bank." *Id.* Thus, the district court implicitly recognized that Alan Chang was the settlor of the Alan Chang Trust. In addition, the court conceded that "[t]he language of the Chang Trust itself supports [the Bank's argument] by specifically naming Alan Chang as the settlor of the trust." *Id.*

Nevertheless, relying upon the holding by a Missouri Court of Appeals in *Bolton Roofing Co. v. Hedrick,* 701 S.W.2d 183 (Mo.Ct. App.1985), the district court concluded that

"there is no policy reason to invalidate this spendthrift clause." *Security Pacific Bank*, 818 F.Supp. at 1346. The court explained that since "the operation of the tenancy in the entirety would have prevented [the creditors] from reaching the property[, the] individual creditors are not deprived of an individual asset that they could have reached absent the spendthrift clause." *Id.*

In *Bolton*, the husband and wife conveyed their interests as tenants in the entirety to a spendthrift trust with the husband as sole trustee and with the husband, wife, and their two sons as beneficiaries. 701 S.W.2d at 184. More than six years after this conveyance, the Bolton Roofing Company obtained a judgment against the husband. The Missouri court held that the spendthrift clause prevented Bolton from reaching the real estate held in the trust. *Id.* at 185.

The *Bolton* court relied upon the following Missouri statutory provision that codifies the prohibition against self-settled spendthrift trusts: " 'If the settlor is also a beneficiary of the trust, a provision restraining the voluntary or involuntary transfer of his beneficial interest will not prevent his creditors from satisfying claims from his interest in the trust estate.' " *Id.* at 184 (quoting Mo.Rev. Stat. § 456.080.3 (Supp.1984)). The court defined "settlor" as "one who furnishes the consideration for the creation of a trust." *Id.* at 184 (citing Black's Law Dictionary 1539 (4th ed. 1968)). The Missouri court concluded that since

> Bolton would not have had any legal right to levy against the real estate owned jointly by Wayne and Alta prior to the time they conveyed it under the trust agreement[,] ... Bolton could not have the same real estate, after it had been conveyed to the trustee by Wayne and Alta, as tenants by the entireties, sold to satisfy an individual debt of Wayne's.

*Id.* at 184.

In addition to relying on *Bolton*, the district court relied on dicta in the Hawaii Supreme Court's decision in *Sawada*. The *Sawada* court held that a husband and wife's conveyance of land held in tenancy by the entirety to their sons *after* the husband incurred liability in a car accident was not in fraud of the husband's judgment creditors. *Sawada*, 57 Haw. at 617, 561 P.2d at 1297. In dicta discussing how the court would act if it were to view the matter "strictly from the standpoint of public policy," the *Sawada* court observed: "If we were to select between a public policy favoring the creditors of one of the spouses and one favoring the interests of the family unit, we would not hesitate to choose the latter." 57 Haw. at 616–17, 561 P.2d at 1297. Here, the district court quoted this passage from *Sawada* as support for its conclusion that "it is clear that the Hawaii Supreme Court's predilection is to favor protecting family owned properties from individual creditors." *Security Pacific Bank*, 818 F.Supp. at 1346.

The district court's decision is wrong for at least two reasons. First, the court erred by relying on a Missouri case that appears to have been wrongly decided. The holding in *Bolton* conflicts with a recent Eighth Circuit decision interpreting Missouri trust law and finds no support in the case law of states, including Hawaii, that recognize spendthrift trusts. Second, the district court's emphasis on the dicta in *Sawada* is misplaced; the court should have focussed on the holding in *Sawada* which is grounded on the fact that the husband-debtor incurred his liability *before* joining his wife in severing their tenancy in the entirety.

### A

The fundamental flaw in the Missouri court's analysis in *Bolton* is its failure to appreciate that the husband incurred the liability *after* he and his wife severed their tenancy by the entirety. By jointly conveying their tenancy by the entirety property to a trust with the husband as the trustee and with the husband, wife, and their two children as the beneficiaries, the husband and wife effectively terminated their tenancy by the entirety. Likewise, here, the Changs terminated their tenancy by the entirety in March 1990, months before Alan Chang incurred his liability for the debts of Qantek in June 1990. Therefore, by enforcing the spendthrift clause, the district court did de-

prive the creditor of an asset that could have been reached absent such a clause.

■ Indeed, courts of several states including Hawaii have held that creditors may not reach property formerly held in tenancy by the entirety when the tenant by the entirety incurred the debt *before* the severance of the tenancy by the entirety. *Sawada v. Endo*, 57 Haw. 608, 561 P.2d 1291 (1977); *see Watterson v. Edgerly*, 40 Md.App. 230, 388 A.2d 934 (1978); *L & M Gas Co. v. Leggett*, 273 N.C. 547, 161 S.E.2d 23 (1968); *Donvito v. Criswell*, 1 Ohio App.3d 53, 439 N.E.2d 467 (1982). Moreover, in all of these cases, the married couple severed the tenancy in the entirety by conveying the property either to the non-debtor spouse or to the couple's children. None of these cases holds, as *Bolton* does, that when a married couple severs a tenancy in the entirety by transferring the property to one spouse as trustee, that spouse may later incur a debt that his creditors cannot enforce by reaching the property held in the trust. When the debt is incurred *after* the severance of the tenancy by the entirety, courts should have no reason to shield from creditors whatever share of the tenancy the debtor may have received after the severance.

Furthermore, the holding in *Bolton* conflicts with the Eighth Circuit's recent reading of Missouri trust law. Applying Missouri trust law to a spendthrift trust created by a husband and wife's conveyance of property held in tenancy by the entirety, the Eighth Circuit rejected the husband's argument that he could not be the settlor for the purposes of the prohibition against self-settled spendthrift trusts. *In re Markmueller*, 51 F.3d 775, 776 n. 3 (8th Cir.1995).

In *Markmueller*, the husband argued that "because the trust was settled with tenancy by the entirety property, the settlor was the unity of Conrad and Emily Markmueller [the husband and wife]." *Id.* at 776 n. 3. The Eighth Circuit found "serious flaws" with this argument and concluded that the prohibition against self-settled spendthrift trusts applied to the husband. *Id.* The court noted:

> [T]he fact that tenancy by the entirety property was used to settle the trust is irrelevant. The unity of person is not applicable to a tenancy by the entirety. *See, e.g., Ronollo v. Jacobs*, 775 S.W.2d 121, 123 (Mo.1989) (en banc). In addition, the unity of person was a common-law legal fiction that Missouri began abrogating in 1889, and no longer recognizes. *See Townsend v. Townsend*, 708 S.W.2d 646, 650 (Mo.1986) (en banc).

*Id.*[1] The court also concluded that the spendthrift provision was invalid because the husband, as trustee, had "the right to exercise dominion or control over trust assets." *Id.* at 777 (citations omitted).

In short, the *Markmueller* court concluded that the "unity of person" concept that underpins tenancy by the entirety does not shield tenancy-by-the-entirety property after it is conveyed to a revocable trust where one spouse has dominion and control over the trust assets.

**B**

Instead of relying on *Bolton*, the district court should have sought guidance from the Hawaii Supreme Court's holding in *Sawada*. The Hawaii Supreme Court held that a husband and wife's conveyance of land held in tenancy by the entirety to their sons *after* the husband incurred liability in a car accident was not in fraud of the husband's judgment creditor. *Sawada*, 57 Haw. at 617, 561 P.2d at 1297. In reaching its conclusion, the court relied in part on the following rationale offered by the Delaware Court of Chancery: " 'If the debt arose prior to the creation of the [tenancy by the entirety], the property

---

1. As the Eighth Circuit correctly indicates, the Missouri Supreme Court has rejected the unity of person fiction in the context of inter-spousal immunity and intentional torts. *Townsend v. Townsend*, 708 S.W.2d 646, 650 (Mo.1986) (en banc). However, it is unclear whether Missouri has actually abandoned the unity of person in the context of tenancies by the entirety. *See In re Town-*send, 72 B.R. 960, 963 (Bkrtcy.W.D.Mo.1987) (extending abrogation of unity of person in *Townsend*, 708 S.W.2d 646, to tenancy by entirety in bankruptcy context). *But cf. Strout Realty v. Henry*, 758 S.W.2d 197, 199 (Mo.Ct.App.1988) (declining to extend *Townsend* to abolish unity of person requirement in context of checking account held in tenancy by entirety).

was not a basis of credit, and if the debt arose subsequently the creditor presumably had notice of the characteristics of the estate which limited his right to reach the property.'" 57 Haw. at 616, 561 P.2d at 1296–97 (quoting *Hurd v. Hughes,* 12 Del.Ch. 188, 193, 109 A. 418, 420 (1920)). It logically follows from the Delaware court's analysis that if a debt arises after the termination of a tenancy by the entirety, then the creditor should be able to reach the property, if any, transferred to the debtor upon the termination of the tenancy.

When the *Sawada* court discussed, in dicta, a public policy of "favoring the interests of the family unit," 57 Haw. at 617, 561 P.2d at 1297, the court did not indicate that in all situations it would "favor protecting family owned properties from individual creditors." *Security Pacific Bank,* 818 F.Supp. at 1346. Rather, the *Sawada* court was simply examining the public policies that justify the protections afforded to tenancies by the entirety. There is no reason to suppose that the Hawaii Supreme Court would afford such protections in a situation such as the one presented here or in *Bolton,* where the debts arose *after* severance of the tenancy by the entirety and where the former entirety property was transferred, at least in part, to the spouse who later incurred the debt.

Therefore, the district court erred as a matter of law by refusing to invalidate the spendthrift clause with respect to the properties transferred to the Alan Chang Trust by the joint conveyance of Alan and Julia Chang. The court defended this result as fair to the Bank, because the Bank could not have reached these properties before the Changs transferred them to the Trust. *Security Pacific Bank,* 818 F.Supp. at 1346. But this is not the point. Although it is true that the Bank could not have reached the properties when the Changs held them in a tenancy by the entirety, it is also true that these properties were not held in tenancy by the entirety when Alan Chang incurred his debt to the Bank. In fact, when Alan Chang assumed liability for Qantek, the Alan Chang Trust (with Alan Chang as settlor, beneficiary, and sole trustee) held an undivided, one-half interest in the properties that had for-

merly belonged to Alan and Julia Chang as tenants in the entirety.

### III

■ By endorsing and applying the Missouri court's holding in *Bolton,* the district court implicitly concluded that Alan Chang was not the settlor of the Alan Chang Trust for the purpose of the prohibition against self-settled spendthrift trusts.

■ The Restatement defines a "settlor" as "the person who creates a trust." Restatement (Second) of Trusts § 3(1) (1959). "While a revocable trust technically comes into existence when it is *signed,* at least in a nominal way, its actual active operation does not normally begin until it is 'funded', that is, until properties are transferred to the trust by the settlor (*or others*) . . . ." Frederick R. Keydel, Revocable Trusts, 180 Practicing Law Institute/Estate Planning and Administration 177 (Mar. 1, 1988) (emphasis added).

Like the court in *Bolton,* the court here fails to distinguish between the execution of the trust agreement and the actual transfer of property into the trust. Here, Alan Chang clearly created the Alan Chang Trust by signing the Revocable Living Trust Agreement "as Settlor and Trustee" on March 27, 1990. On the first page of the Agreement, Alan Chang is listed as "Settlor." The Agreement defined the "trust property" as $10 "and such other property that the Settlor may from time to time transfer to the Trustee." Thus, the $10 constituted the initial trust property provided directly by the settlor.

By warranty deed of March 27, 1990, Alan and Julia Chang (as transferors) transferred one-half undivided interests in three real property parcels to the Alan Chang Trust that had been earlier created by Alan Chang as settlor. The fact that Alan and Julia Chang jointly severed their tenancy by dividing the property between the two trusts did not mean that Alan Chang suddenly lost his status as the settlor of the Alan Chang Trust.

Thus, Alan Chang was the settlor of the Alan Chang Trust for the purposes of the prohibition against self-settled spendthrift trusts.

## IV

Finally, the Changs argue that if the spendthrift clause of the Alan Chang Trust is void, then their transfer of the tenancy-by-the-entirety properties is also void because these transfers were made subject to the validity of the Trust's spendthrift clause. This argument is without merit.

The only support that the Changs cite for their argument is the first clause of the Alan Chang Trust Agreement, which states: "*Trust Property.* The trust property consists of the property described in Schedule 'A' attached hereto and made a part hereof, subject to the terms and conditions hereinafter stated." Since the spendthrift provision is clause 8 of the Trust Agreement, the Changs maintain that their transfers to the Trust were made subject to the spendthrift clause. This does not necessarily follow.

The effect of the first clause is simply to subject the trust property, once transferred, to the terms and conditions of the Trust Agreement. The first clause says nothing about invalidating transfers to the trust in the event that one of the Agreement's clauses is later voided. In fact, it is well-settled that when a court declares a spendthrift clause to be invalid, the court simply voids the spendthrift clause while leaving the rest of the trust intact, though subject to the reach of creditors. *In re Goff,* 812 F.2d 931, 933 (5th Cir.1987) (spendthrift clause is void, but trust remains valid); *Liberty Nat'l Bank v. Hicks,* 173 F.2d 631, 634 (D.C.Cir.1948) (same); *see also* G. Bogert, Trusts § 40, at 155 (6th ed. 1987) ("the trust is valid but the spendthrift clause is void as to the present and future creditors").

## V

For the foregoing reasons, we reverse the district court's grant of summary judgment for the Changs. We remand to the district court with instructions to enter judgment in favor of the Bank.

REVERSED and REMANDED.